**MARCH 27, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

**08 C 50050**

| | |
|---|---|
| BOARD OF TRUSTEES of the ROCKFORD PIPE TRADES INDUSTRY PENSION FUND;<br>BOARD OF TRUSTEES of the PLUMBERS & PIPEFITTERS, LOCAL 23, U.A. HEALTH & WELFARE FUND;<br>BOARD OF TRUSTEES of the PLUMBERS & PIPEFITTERS, LOCAL 23, U.A. JOURNEYMAN AND APPRENTICE TRAINING FUND;<br>PLUMBERS & PIPEFITTERS, LOCAL 23, U.A.; and<br>PIPING INDUSTRY COUNCIL OF THE ROCKFORD AREA;<br>　　　　　　　　　Plaintiffs,<br><br>　　　　vs.<br><br>KERBY PLUMBING, INC.,<br>an Illinois Corporation,<br>KERBY PLUMBING & MECHANICAL, INC.,<br>an Illinois Corporation, and<br>CHRISTOPHER KERBY, an individual,<br><br>　　　　　　　　　Defendants. | CIVIL ACTION<br><br>NO:　**JUDGE REINHARD**<br>　　**MAGISTRATE JUDGE MAHONEY**<br><br>JUDGE:<br><br>MAGISTRATE JUDGE: |

## COMPLAINT

Now come Plaintiffs, the BOARD OF TRUSTEES of the PIPE TRADES INDUSTRY PENSION FUND, *et al.*, by and through their attorneys, JOHNSON & KROL, LLC, complaining of the Defendants, KERBY PLUMBING, INC. (hereinafter referred to as "KERBY PLUMBING"), KERBY PLUMBING & MECHANICAL, INC. (hereinafter referred to as "KERBY PLUMBING & MECHANICAL") and CHRISTOPHER KERBY (hereinafter referred to as "KERBY") and allege as follows:

1

## JURISDICTION, VENUE, PARTIES, AND PRELIMINARY FACTS

1.  This action arises under Section 502 of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA") and Section 301 of the Labor-Management Relations Act. (29 U.S.C. § 1132 and 185). Jurisdiction is founded on the existence of federal questions arising thereunder.

2.  The BOARD OF TRUSTEES of the ROCKFORD PIPE TRADES INDUSTRY PENSION FUND; the BOARD OF TRUSTEES of the PLUMBERS & PIPEFITTERS, LOCAL 23, U.A. HEALTH & WELFARE FUND; the BOARD OF TRUSTEES of the PLUMBERS & PIPEFITTERS, LOCAL 23, U.A. JOURNEYMAN AND APPRENTICE TRAINING FUND (hereinafter collectively referred to as the "TRUST FUNDS"); and the PIPING INDUSTRY COUNCIL OF THE ROCKFORD AREA ("hereinafter referred to as the "INDUSTRY COUNCIL") receive contributions from numerous employers pursuant to the Labor Agreements between the Employer and the PLUMBERS & PIPEFITTERS, LOCAL 23, U.A. (hereinafter referred to as the "UNION") and therefore, are multi-employer plans under 29 U.S.C. § 414(f).

3.  The Trust Funds are administered at 4525 Boeing Drive, Rockford, Illinois 61109. Therefore, venue is proper in the Northern District of Illinois, Western Division.

4.  The BOARD OF TRUSTEES of the PLUMBERS and PIPE FITTERS, Local 23 U.A. JOURNEYMAN AND APPRENTICE TRAINING FUND is the collection agent for the INTERNATIONAL TRAINING FUND.

5.  The UNION is the bargaining representative of KERBY PLUMBING's bargaining unit employees.

6.    The Defendant KERBY PLUMIBNG is an employer engaged in an industry affecting commerce which entered into a Subscription Agreement (attached hereto as Exhibit 1) whereby it agreed to be bound by the provisions of a Labor Agreement negotiated between the UNION and the INDUSTRY COUNCIL for all times relevant to this action. (A copy of the Labor Agreement is attached hereto as Exhibit 2).

7.    Through the agreements referred to in paragraph 6, the Defendant KERBY PLUMBING became bound by the provisions of the Agreements and Declarations of Trust which created the TRUST FUNDS (hereinafter referred to as the "Trust Agreements").

8.    Defendant KERBY PLUMBING & MECHANICAL is the successor company of KERBY PLUMBING and is an employer engaged in an industry affecting commerce that performs the same type of work as KERBY PLUMBING.

9.    Defendant KERBY is a former Apprentice and Journeyman member of the UNION who was an employee and/or principal officer of KERBY PLUMBING and is currently an employee and/or principal officer of KERBY PLUMBING & MECHANICAL.

### COUNT I
### BREACH OF CONTRACT – KERBY PLUMBING

10.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-9 of this Complaint with the same force and effect as if fully set forth herein.

11.    The Subscription Agreement executed by KERBY PLUMBING bound the Company to the Labor Agreement that was in effect for the period of June 1, 2002 through May 31, 2007.

12.    The terms of the Subscription Agreement provides that notice of termination must be in writing and sent to the other party at least 60 days in advance of the expiration date of the

3

Labor Agreement.  (Exhibit 1, ¶ 3.)

13.    The Subscription Agreement further provides that if the Agreement is not terminated, the Employer shall become bound by terms of any successor Labor Agreements entered into between the UNION and INDUSTRY COUNCIL. (Exhibit 1, ¶ 3.)

14.    On or about April 17, 2007, the Defendant KERBY PLUMBING sent a letter to the Union that purported to terminate the Subscription Agreement that binds it to the terms of the Labor and Trust Agreements (Exhibit 3.)

15.    Upon receiving the purported termination of the Subscription Agreement, the UNION notified KERBY PLUMBING that the termination was not timely and was not accepted. (Exhibit 4.)

16.    KERBY PLUMBING failed to provide the UNION with timely notice of termination 60 days in advance of May 31, 2007, the date on which the previous Labor Agreement expired.

17.    Because KERBY PLUMBING failed to provide timely notice of termination of the Subscription Agreement, it became bound to the current Labor Agreement for the period of June 1, 2007 through May 31, 2012.

18.    Pursuant to the provisions of the Labor Agreement, the Defendant KERBY PLUMBING is required to make monthly reports of hours worked by Covered Employees (hereinafter referred to as "monthly Contribution Reports") and pay contributions to the TRUST FUNDS for each hour worked at the rate specified in the Labor and Trust Agreements. The monthly Contribution Reports and payments during all times relevant were due on or before the 10th day of the calendar month following the calendar month during which the work was performed.

4

19.   Pursuant to Section 502(g)(2) of ERISA, the Labor and Trust Agreements, Employers who fail to submit their monthly Contribution Reports and contributions to the Trust Funds on a timely basis are responsible for the payment of liquidated damages at a rate of 5% of the delinquent contribution.

20.   Pursuant to the Labor Agreement, employers who fail to submit their monthly Contribution Reports and contributions to the INDUSTRY COUNCIL on a timely basis are responsible for the payment of liquidated damages at a rate of 5% of the delinquent contribution.

21.   Pursuant to Section 502(g)(2) of ERISA, and the provisions of the Labor Agreement and Trust Agreements, employers who fail to submit their monthly Contribution Reports and contributions to the TRUST FUNDS on a timely basis are responsible for the payment of interest on unpaid contributions at the rate of Prime plus two percent (2%) per annum from the first day of the month following the month in which they are due until paid, plus any reasonable attorneys fees, court costs, and other expenses of maintaining suit.

22.   Pursuant to the provisions of the Labor Agreement and Trust Agreements, employers who fail to submit their monthly Contribution Reports and contributions to the INDUSTRY COUNCIL on a timely basis are responsible for the payment of interest on unpaid contributions at the rate of Prime plus two percent (2%) per annum from the first day of the month following the month in which they are due until paid, plus any reasonable attorney's fees and costs for maintaining suit.

23.   Defendant KERBY PLUMBING & MECHANICAL became the successor company of KERBY PLUMBING on or about May of 2007.

24.    KERBY PLUMBING and KERBY PLUMBING & MECHANICAL have failed to submit monthly Contribution Reports and contribution payments to the TRUST FUNDS for the period of June 2007 through February 2008 and owes the contributions plus whatever liquidated damages and interest charges have accrued for the period of June 2007 through February 2008.

**COUNT II**
**SUCCESSOR LIABILITY – KERBY PLUMBING & MECHANICAL**

25.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-24 of this Complaint with the same force and effect as if fully set forth herein.

26.    Defendant KERBY PLUMBING & MECHANICAL was incorporated on or about May 15, 2007.

27.    Defendant KERBY PLUMBING was voluntarily dissolved on or about August 8, 2007.

28.    KERBY PLUMBING & MECHANICAL occupies the same offices, utilizes the same tools and equipment, and has the same principal officers as KERBY PLUMBING did prior to its dissolution.

29.    Defendants KERBY PLUMBING and KERBY PLUMBING & MECHANICAL are both owned and operated by the Kerby family.

30.    KERBY PLUMBING & MECHANICAL operates in the same industry and trade jurisdiction, employs some of the same employees, and shares a common or similar name with KERBY PLUMBING.

31.   KERBY PLUMBING & MECHANICAL is the successor company of KERBY PLUMBING

and is liable for any debt and/or obligations that KERBY PLUMBING accumulated and

continues to accumulate through its continuing contractual obligation to the TRUST FUNDS,

INDUSTRY COUNCIL and the UNION.

32.   Upon request, KERBY PLUMBING & MECHANICAL submitted to two audits conducted

by the Combined Crafts Statewide Audit Program on behalf of the TRUST FUNDS and the

UNION.

33.   The audit conducted by Combined Crafts Statewide Audit Program on or about August 28,

2007 revealed that Defendant KERBY PLUMBING & MECHANICAL failed to report hours

worked by bargaining unit employees and failed to submit contributions for the period of

June 1, 2007 through July 31, 2007.  (A copy of the Audit Report is attached as Exhibit 5.)

34.   A second audit conducted by Combined Crafts Statewide Audit Program on or about

December 13, 2007 revealed that Defendant KERBY PLUMBING & MECHANICAL failed

to report hours worked by bargaining unit employees and failed to submit contributions for

the period of August 1, 2007 through November 30, 2007.  (A copy of the Audit Report is

attached hereto as Exhibit 6.)

35.   Pursuant to the two Audit Reports referenced above, Defendant KERBY PLUMBING &

MECHANICAL owes the TRUST FUNDS, INDUSTRY COUNCIL, and the UNION unpaid

contributions in the amount of $46,046.96.

36.   As a result of Defendant KERBY PLUMBING & MECHANICAL'S failure to submit

Contribution Reports and contribution payments in a timely manner, liquidated damages and

interest have accrued for the audited period of June 1, 2007 through November 30, 2007 in

7

the amount of $2,929.17.

37.    On or about January 2008, Plaintiffs collected $20,000.00 as the beneficiary of an Irrevocable Letter of Credit posted on behalf of KERBY PLUMBING in accordance with the bonding requirements of the Labor Agreement.

38.    After applying the proceeds from the Irrevocable Letter of Credit, the total *known* amount due and the owing the plaintiffs is approximately $28,976.13 in unpaid contributions, liquidated damages, and interest charges for the period of August 1, 2007 through November 30, 2007.

39.    KERBY PLUMBING & MECHANICAL has further failed to submit Contribution Reports and contribution payments for the period of December 1, 2007 through the Present. As a result, the amount due and owing the Plaintiffs for this period cannot yet be determined.

40.    Because of KERBY PLUMBING & MECHANICAL'S failure and/or refusal to submit monthly Contribution Reports and payments in a timely manner, additional liquidated damages, and interest charges have accrued in an unknown amount.

41.    KERBY PLUMBING & MECHANICAL is required submit all missing Contribution Reports together with all unpaid contributions, liquidated damages and interest charges that have accrued.

## COUNT III
### BREACH OF CONTRACT – CHRISTOPHER KERBY:

42.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-9 of this Complaint with the same force and effect as if fully set forth herein.

43. Pursuant to provisions of the Trust Agreement, the BOARD OF TRUSTEES of the PLUMBERS & PIPEFITTERS, LOCAL 23, U.A. JOURNEYMAN AND APPRENTICE TRAINING FUND is responsible for the Rockford Area Plumbing, Pipefitting and Refrigeration Joint Apprenticeship and Training Committee (hereinafter referred to as the "JATC"), and is authorized to bring actions on behalf of the JATC.

44. Defendant KERBY entered into four (4) separate Scholarship Loan Agreements with the JATC in the aggregate amount of $11,200.00. (Copies are attached as Exhibit 7.)

45. The Scholarship Loan Agreements provide for credit to the scholarship amount for every year that the Apprentice works as a Journeyman Plumber or Pipefitter for an Employer that contributes to the JATC or a like Committee.

46. The terms of the Scholarship Loan Agreements further provide that the Agreement is breached when the Apprentice accepts employment in the Plumbing and Pipefitting Industry from an Employer who makes no payments to the JATC or other like Committees.

47. On or about August 27, 2007, Defendant KERBY terminated his membership with the UNION. (A copy of the letter is attached as Exhibit 8.)

48. Defendant KERBY breached the terms of the Scholarship Loan Agreement by working for an Employer that was not submitting payments to the JATC.

49. Defendant KERBY'S scholarship amount was credited with $2,800.00 for years of service between June 1, 2005 and August 27, 2007.

50. Defendant KERBY owes the JATC unpaid scholarship loans in the amount of $7,400.00.

9

51.    The Scholarship Loan Agreement provides that upon breach, the Apprentice shall pay interest at the prime rate from the date of the Agreement, plus reasonable attorney's fees and all court costs.

### AS TO COUNTS I, II, AND III

52.    Plaintiffs have been required to employ the undersigned attorneys to collect the monies that are found due and owing from the Defendants.

53.    Plaintiffs have complied with all conditions precedent in bringing this suit.

54.    Defendants are obligated to pay attorney fees, audit fees, and court costs incurred by the Plaintiffs pursuant to the underlying Labor Agreement, Trust Agreements, and 29 U.S.C. §1132(g)(2)(D).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray:

A.    That judgment be entered in favor of Plaintiffs and against Defendants KERBY PLUMBING and KERBY PLUMBING & MECHANICAL jointly and severally in the amount of $29,578.04;

B.    That judgment be entered in favor of Plaintiffs and against Defendants KERBY PLUMBING and KERBY PLUMBING & MECHANICAL jointly and severally for whatever contributions, liquidated damages, interest and UNION dues that are found to be due and owing, in addition to the amount referred to in paragraph A above;

C.    That judgment be entered in favor of Plaintiffs and against Defendant KERBY in the amount of $7,400.00, plus interest at the prime rate prevailing from the date of the Scholarship Loan Agreement, reasonable attorney's fees, and all court costs;

D.   That Declaratory Judgment be entered in favor of Plaintiffs and against Defendants KERBY PLUMBING and KERBY PLUMBING & MECHANICAL declaring that KERBY PLUMBING and KERBY PLUMBING & MECHANICAL are bound to the current Labor Agreement;

E.   That a Permanent Injunction be entered in favor of Plaintiffs and against Defendants KERBY PLUMBING and KERBY PLUMBING & MECHANICAL to enjoin Defendants KERBY PLUMBING and KERBY PLUMBING & MECHANICAL from committing further violations of the Labor Agreement, Trust Agreements and ERISA;

F.   That the Defendants KERBY PLUMBING, KERBY PLUMBING & MECHANICAL, and KERBY jointly and severally be ordered to pay the reasonable attorney fees, audit fees, and costs incurred by the Plaintiffs, pursuant to the Labor Agreement, Trust Agreements and 29 U.S.C. §1132(g)(2)(D); and

G.   That Plaintiffs have such other and further relief as the Court may deem just and equitable all at the Defendants' cost, pursuant to 29 U.S.C. §1132(g)(2)(E).


Respectfully submitted,

JOHNSON & KROL, LLC

By:___ /s/ Joseph E. Mallon_____
      Joseph E. Mallon
      One of Plaintiffs' Attorneys

Johnson & Krol, LLC
208 South LaSalle, Suite 1602
Chicago, IL 60604
(312) 372-8587

11

# SUBSCRIPTION AGREEMENT

This Agreement is entered into by and between KERBY PLUMBING, INC ("Employer") and the Plumbers, Pipefitters and Refrigeration Fitters, Local 23 U.A. (Union").

This Agreement is made in consideration of the mutual promises of the parties who hereby agree as follows:

1. The Employer has on the basis of objective and reliable information, confirmed that a clear majority of the plumbers, pipe fitters and refrigeration fitters in its employ have designated, are members of, and are represented by the Union for purposes of collective bargaining. The Employer, therefore, unconditionally acknowledges and confirms that the Union is the sole and exclusive bargaining representative of the employees of the Employer within the Territorial and Trade jurisdiction of the Union pursuant to Section 9(a) of the National Labor Relations Act.

2. The Employer hereby subscribes to and shall be bound by the terms of the Labor Agreement by and between the Union and the Piping Industry Council Rockford Area ("PICRA") dated June 1, 2002. The Employer shall also be bound to any amendments or modifications to the Labor Agreement agreed to by PICRA and the Union. The Labor Agreement, including any subsequent amendments or modifications thereto, is incorporated herein by reference.

3. This Agreement shall be effective as of _1/2/07_. This Agreement may be terminated by either party on an expiration date of the Labor Agreement between the Union and PICRA. Such termination shall only be effective upon written notice sent to the other party at least 60 days in advance of the expiration date of Labor Agreement. In the event that neither party properly terminates this Agreement on the expiration of the Labor Agreement, then the Employer shall become bound to the terms of any successor agreement(s) to the Labor Agreement entered into between the Union and PICRA pursuant to the terms of this Agreement. This Agreement may also be terminated or modified by written agreement of the parties.

4. The Employer acknowledges that it has received a copy of the Labor Agreement prior to execution of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Subscription of Agreement this _2_ day of _JANUARY_, 20_07_.

Company Name: _KERBY PLUMBING, INC_

Address: _4771 ALEXANDRA LANE, MACHESNEY PARK_

_Robh D Kerby_
**AUTHORIZED SIGNATURE**

_VICE PRESIDENT_
**TITLE**

02/05/02

_Darlen Russell_
**BUSINESS MANAGER**
**PLUMBERS, PIPEFITTERS and**
**REFRIGERATION FITTERS,**
**LOCAL 23 U.A.**

**EXHIBIT**

_1_

# SUPPLEMENTAL AGREEMENT

## Residential Type Work

### ARTICLE I

WITNESSETH, This Agreement made this __2__ day of __JANUARY__ , 20 __07__ by and between __KERBY PLUMBING, INC__ and Local #23, United Association of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry of the United States and Canada.

WHEREFORE, the parties do agree as follows:

A.   That they adopt the provisions of a certain basic Agreement executed by Local #23, United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry of the United States and Canada and Piping Industry Council - Rockford Area. All Articles of the basic Agreement shall be applicable to the Supplemental Agreement except those exclusions herein stated. Any dispute as to whether the Basic Agreement or the Supplemental Agreement would apply shall be the exclusive decision of the Union. The basic contract is in full force and effect through the 31st day of May, 2007, together with any extensions and modifications hereof.

B.   Any employer desiring to do residential work, according to provisions stipulated in the Supplemental Agreement, shall sign the basic Union Agreement along with the Supplemental Agreement with the Union in order to avail himself of the special provisions contained herein.

C.   The parties agree further, however, that with respect to residential construction defined in the following paragraph, they desire to modify the basic contract above referred to and put into effect certain special provisions covering residential construction.

### ARTICLE II

### Scope of Work

The parties agree that residential plumbing, for the purpose of this instrument, means the new construction and erection, remodeling, repair, servicing or renovation of plumbing facilities of all housing units not to exceed three (3) levels (including the level below ground) if these are living quarters. Housing units shall include single dwellings, duplexes, row houses, town houses and garden type walk-up apartment buildings not to exceed twelve (12) units in any one building. The following work is excluded from residential type work: those housing units which are normally referred to as "High Rise" buildings constructed of steel and concrete; apartment buildings that have commercial stores, offices or professional quarters in conjunction with the buildings. Any company who abuses the use of the Supplemental Agreement when the Basic Agreement would apply shall be denied the use of the Supplemental Agreement.

1

# ARTICLE III

## Hours of Work

Eight hours of work performed between the hours of 6:00 a.m. and 5:30 p.m., with a half hour lunch break, shall constitute a days work, and forty hours, Monday through Friday, shall constitute a workweek. Overtime and Saturday work shall be at the rate of time and one half. Sundays and Holidays shall be at the rate of double time. Time missed by an employee during the workweek may be made up on the Saturday of that week at straight time by mutual agreement between employee and employer.

# ARTICLE IV

## Wages

A. The parties agree that for the purpose of residential plumbing, the wages to be paid to Journeymen from the effective date of this Agreement shall be as follows:

| | |
|---|---|
| Effective June 1, 2002 | ( 85%) |
| Effective June 1, 2003 | ( 90%) |
| Effective June 1, 2004 | ( 95%) |
| Effective June 1, 2005 | (100%) |

of the Journeymen rate in the basic Agreement between Local 23 and P.I.C.R.A.

B. Wages for Apprentices shall be based on Journeymen residential plumbing rate:

| | |
|---|---|
| 1st year | (40%) |
| 2nd year | (50%) |
| 3rd year | (60%) |
| 4th year | (70%) |
| 5th year | (80%) |

First year Apprentices shall serve one-year probation. In the first twelve months, or new hire probationary period, no pension contributions will be made by the contractor, however, hours worked will apply for vesting only. All new hires shall serve a 90-day probationary period.

# ARTICLE V

## Health & Welfare and Pension

Will be the same as outlined in Article XIV of the current basic Agreement.

# ARTICLE VI

## Apprenticeship Educational Fund Trust

Will be the same as outlined in Article XIV of the current basic Agreement.

# ARTICLE VII

## Term of Agreement

This Supplemental Agreement – Residential Type Work shall be in full force and effect from ___1/2/07___ to, and including, May 31, 2007. If either party wishes to modify this Supplemental Agreement, it shall serve notice in writing of such request upon the other party not less than 60 days prior to May 31, 2007. In the absence of such notice, this Supplemental Agreement and Basic Agreement shall automatically renew itself, together with all amendments and improvements as negotiated by and between the Union and the Association of employers for the period of any such amendment.

IN WITNESS WHEREOF, the parties have affixed their signatures hereto this ___2___ day of ___JANUARY___, 20_07_.

CONTRACTOR                                           LOCAL UNION 23

_Robt A D Kerby_                                     _Danley Russell_
AUTHORIZED SIGNATURE                                 BUSINESS MANAGER
_VICE PRESIDENT_                                     PLUMBERS, PIPEFITTERS and
TITLE                                                REFRIGERATION FITTERS,
                                                     LOCAL 23 U.A.

_KERBY  PLUMBING, INC_
COMPANY NAME

_4771 ALEXANDRA LANE,  MACHESNEY PARK, IL 61115_
COMPANY ADDRESS

4

# LABOR AGREEMENT

Between

## UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA

Local 23
Rockford, Illinois

and

Piping Industry Council
Rockford Area
Incorporated

Effective
June 1, 2002 through May 31, 2007



EXHIBIT
2

# LABOR AGREEMENT

Between

## UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA

Local 23
Rockford, Illinois

and

Piping Industry Council
Rockford Area
Incorporated

Effective
June 1, 2002 through May 31, 2007



# TABLE OF CONTENTS

|  | PREAMBLE | 1 |
| ARTICLE I | RECOGNITION | 2 |
| ARTICLE II | WORK WEEK & HOURS | 5 |
| ARTICLE III | TERM SUPERVISION STEWARDS APPRENTICES | 15 |
| ARTICLE IV | JURISDICTION QUALITY CONTROL | 19 |
| ARTICLE V | TOOLS - CLOTHING | 21 |
| ARTICLE VI | TRAVEL EXPENSE | 24 |
| ARTICLE VII | TRAVEL PAY | 25 |
| ARTICLE VIII | WORK REQUIREMENTS | 26 |
| ARTICLE IX | STATE & FEDERAL INSURANCE | 28 |
| ARTICLE X | APPRENTICES | 29 |
| ARTICLE XI | EMPLOYEE EXAMINATIONS | 30 |
| ARTICLE XII | JOINT CONFERENCE COMMITTEE | 31 |
| ARTICLE XIII | CODES - CEP | 36 |
| ARTICLE XIV | FUNDS | 36 |
| ARTICLE XV | NON-DISCRIMINATION | 47 |
| ARTICLE XVI | NO STRIKE - NO LOCKOUT | 49 |
| ARTICLE XVII | MANAGEMENT RIGHTS | 50 |
| ARTICLE XVIII | TRADE JURISDICTION | 51 |
| ARTICLE XIX | TERM & EFFECTIVE DATE | 60 |
|  | SUBSTANCE ABUSE | 61 |
|  | INDEX | 73 |
|  | JURISDICTION MAP | 75 |

Savanna Ordinance Depot. Other than the exceptions as noted, this includes all cities, towns, and villages in these respective counties and such other jobs or jobs or territorial jurisdiction that may be granted and assigned to the jurisdiction of the Union (see attached jurisdictional map).

# ARTICLE I
# RECOGNITION

## Section 1.1. Union.

The Union has demonstrated to the Association that it has majority support by presenting authorization cards, signed by employees, authorizing the Union as the employees' exclusive bargaining representative. The Union has unequivocally demanded recognition as the employees § 9(a) representative.

The Association, on behalf of the Employers, has on the basis of objective and reliable information, confirmed that a clear majority of the plumbers, pipe fitters and refrigeration fitters in the Employers' employ have designated, are members of, and are represented by the Union

2

---

*PICRA / LOCAL 23 EMPLOYEE REQUEST FORM*
*Local 23    815/397-0350    815/397-0466 (Fax)*

LOCAL 23 USE ONLY
Request #: ___
Date/Time: ___
Entered By: ___
LU23 Bus. Rep. ___

**Request made by:**                **Report to:**

Employer ___        Address ___
Address ___
City ___            City ___
State ___ Zip ___   State ___ Zip ___
Phone (   ) ___     Phone (   ) ___
Fax (   ) ___
Signature ___       Employer representative
Printed name ___    at job site
Filed on ___/___/___ at ___ am/pm    Report on ___/___/___ at ___ am/pm

Note: Please use a separate form for each request where skill requirements differ.

**Pipe Fitter**
☐ General Pipe Fitting Skills
☐ Ammonia Systems
☐ Steam Systems
☐ Service Work

**Welding** — **Test Required**
☐ Sick ........... ☐
☐ Carbon ....... ☐
☐ Stainless ☐

Heli-Arc
☐ Carbon ☐
☐ Stainless ☐
☐ M.I.G. Welder ......... ☐

**Plumber**
☐ Illinois License
☐ Medical Gas Certified
☐ Service Work

**Additional Requirements**
☐ Certificate of CPC Qualification

☐ Pipe Fitter
☐ Plumber
☐ Refrigeration Fitter

Affirmative Action Requirements
(indicate number of persons requested)
___ No such requirements
___ Qualified Minority(ies)
___ Qualified Female(s)

Job Description/Estimated Duration:
_____
_____
_____
_____
_____

3

for purposes of collective bargaining. The Employers, Association, therefore, and on behalf of the Employers, unconditionally acknowledges and confirms that the Union is the sole and exclusive bargaining representative of the Employees of the Employers within the Territorial and Trade Jurisdiction of the Union pursuant to § 9(a) of the National Labor Relations Act.

(a) Any Local 23 member may be requested from the referral book, by name, (in writing) by a contractor. For every one member a contractor request, the next member sent to that contractor will be referred by the Local from the referral book and per the contractors required qualifications (per a PICRA/Local 23 Employee Request Form).

**Section 1.2-Favored Nation.** In the event that Local #23, individually, enters into a collective bargaining agreement with another party which extends more favorable contract terms than those set forth herein, then the contractors signatory to this agreement may elect to be covered by any or all of such more favorable contract terms by serving written notice of same upon the Union. This provision shall not apply to any contract terms set forth in National or

4

International Agreements, Multi Union contracts, and contracts with Government Bodies.

All individual contracts negotiated by the Union with other parties shall be submitted to, and placed on file with, the PICRA office.

## ARTICLE II

## WORK WEEK AND HOURS

**Section 2.1. Reporting and Pick Up.** Employees shall report for work, whether at job, shop or supply house, at ten (10) minutes before the regular starting time, and shall be allowed reasonable time to pick up tools, etc., before the regular quitting time.

**Section 2.2. Hours.** Monday through Friday, an eight (8) hour straight time shift will consist of eight (8) consecutive hours between the time of 6:00 a.m. and 4:30 p.m. upon mutual consent of Employer and Employee and notice to the Union.

Any loss of time can be voluntarily made up on Saturday, of the same workweek, at the base straight-time hourly wage rate plus applicable fringe benefit fund contributions, by mutual

5

agreement between the Employer, the Employee and the Union. Under no circumstances will an employee be allowed to make up lost time on Sundays, Holidays or the following workweek. An Employer may not lay off, discharge or discriminate against any employee for refusal to work on a Saturday make-up day. Local Union 23 must be notified for approval prior to implementing this make-up provision.

**Section 2.3.   Four tens.** A four day work week consisting of four (4) ten (10) hour days may be worked. The work day shall be between the hours of 6:00 a.m. 6:30 p.m. The work week shall be Monday through Friday. The minimum that shall be worked to establish a four (4) day ten (10) hour work schedule shall be one week. The day off may be Monday through Friday due to holidays or weather related days. If working overtime the previous week, any time in excess of (8) eight hour per day the holiday or rain out week will be paid at 1 1/2 time the straight time rate.

**(a) Overtime.** All hours worked before or after scheduled ten (10) hours shall be paid at overtime rates described in Article II. Should it be required to work five (5) days while working

6

scheduled 4/10 work week, overtime shall be paid on a daily basis in accordance with Article II. Fifth day of 4 day work week and Saturday will be paid at 1 1/2 times the straight time rate.

**Section 2.4. Mutual Starting Times.** Daily and weekly starting times established in this section shall be by a mutual agreement between the employer and a majority of the Employees at the shop or job site.

**Section 2.5. Continuity of Employment.** It shall be the policy of all parties subject to this Agreement to maintain continuity of employment for Employees and to regulate and operate all work within these regular work days.

**Section 2.6. Saturday Rate.** Except as provided in Section 2.2 all work performed on Saturdays shall be compensated at one and one-half (1 1/2) times the straight-time hourly wage rate.

**Section 2.7. Service Overtime.** All overtime service work will be paid at one and one-half (1 1/2) times the regular rate. All service work performed on Holidays (New Year's Day, Easter, Decoration Day, Fourth of July, Labor Day, Veteran's Day, Thanksgiving Day and

7

Christmas Day) will be paid at the rate of double (2) times. Should a question arise whether the work is actually service, it shall be decided in accordance with the grievance procedure provided in this Agreement.

**Section 2.8. Portal-to-Portal Pay.** The portal-to-portal rate of pay (as in Article II, Section 2.7) starts at the employees residence or a 25 mile radius of the contractors shop, whichever is closer.

(a) If the employee lives outside of the 25 mile radius and travels to a job within the 25 mile radius he shall receive the travel pay rate as per Article VI, Section 6.2. When he reaches the 25 mile zone he shall then start receiving the portal-to-portal rate as per Article II, Section 2.7.

(b) If the employee lives outside of the 25 mile radius and travels to a job outside of the 25 mile zone, he shall receive the portal-to-portal rate as per Article II, Section 2.7.

**Section 2.9. Overtime - Time & One Half.** Work that cannot be rescheduled during normal day shift hours due to interference of production, will be paid at the rate of one and one-half (1 1/2) times. the regular rate; after 8 hours

8

Monday - Friday; all hours on Saturday except as provided in Section 2.2. Should there be a question in regards to rescheduling work, it shall be decided in accordance with the grievance procedure provided in this Agreement.

**Section 2.10. Service Hours.** Employers doing service work may work eight (8) hours a day, Tuesday through Saturday. The work day shall conform to Section 2.2 of this Agreement upon mutual consent between the Employer and the Employee and notice to the Union. Should a question arise whether the work is service it shall be decided in accordance with the grievance procedure provided in this Agreement.

**Section 2.11. Overtime - Double.** All other time (excluding service as stated in Section 2.7), including Sundays, Holidays (New Year's Day, Decoration Day, Fourth of July, Labor Day, Veterans Day, Thanksgiving Day and Christmas Day) will be paid at the rate of double (2) time.

The following seven (7) days shall constitute the legal holidays within the terms of this Agreement and will be celebrated on nationally recognized days: (actual calendar day): New Year's

9

Day, Decoration Day, Fourth of July, Labor Day, Veterans Day, Thanksgiving Day and Christmas Day.

**Section 2.12. Records Access.** The Union shall have access to Employer payroll records through the use of the trust fund accounting firm. The auditing expense will be borne by the firm. The Union when there are questions of compliance with pay rates on overtime provisions of the Agreement and claimed violation shall be subject to the grievance procedure of this Agreement.

**Section 2.13. Show Up Time.** An Employee reporting for work at the regular starting time and for whom no work is available, shall receive pay for two (2) hours at the basic hourly rate of wages, unless he has been notified within a reasonable amount of time before leaving his home not to report.

**(a) Weather Conditions.** An Employee reporting for work at the regular starting time at a shop or job, and for whom no work is available due to weather conditions, will receive two (2) hours pay for reporting time. To be eligible to receive such reporting pay, the Employee must

10

check in at the job or shop at the regular starting time and remain there for two (2) hours. In order to qualify for the pay provided for in this Article, the Employee must remain on the job available for work during the period of time for which he receives pay unless released sooner by the Employer's superintendent or, in his absence, the foreman.

**(b) Weather Conditions.** The Employer shall have sole responsibility to determine availability of work due to weather conditions. When the conditions set forth in this paragraph occur on an overtime day, or on shift work, the premium rate shall be paid.

**Section 2.14. Coffee Break.** A coffee break not to exceed ten (10) minutes in the morning and ten (10) minutes in the afternoon, from the Employee's lunch container, immediately adjacent to his work area shall be allowed.

**(a)** An additional ten (10) minute break will be granted in lieu of a dinner break when on a twelve (12) hour shift. In the best interests of the industry as a whole, Employees shall avoid congregating in groups during breaks. Service men shall avoid coffee breaks until completion

11

of service call.

**Section 2.15. Shift Time-Construction Work.** When two (2) shifts are employed for a period of five (5) consecutive days or more, the shift employed between the hours of 8:00 a.m. and 4:30 p.m. shall receive the regular rate of pay and shall be identified as the First Shift. The Second Shift will be between the hours of 4:30 p.m. and 1:00 a.m. Floating starting time may apply as in Section 2.2. of this Article.

| | | |
|---|---|---|
| 8:00 a.m.-4:30 p.m. | 1st Shift | Regular Pay |
| 4:30 p.m.-Midnight | 2nd Shift | 15% Premium Pay |
| Midnight-8:00 a.m. | 3rd Shift | 25% Premium Pay |

(a) When three (3) eight hour shifts are employed, the third shift shall start at 12:01 a.m. Monday and end at 8:00 a.m. Monday and shall be known as 3rd Shift. The next shift shall start at 8:00 a.m. Monday and shall be known as the 1st Shift. The next shift shall start at 4:30 p.m. Monday and end at 12:00 Midnight, and shall be know as the 2nd Shift. Employees working the 1st Shift shall receive the regular rate of pay,

employees working the 2nd Shift - 15% and 3rd Shift shall receive pay for eight hours at the regular rate, in addition thereto premium pay equal to 25% of the regular rate, which shall be identified as shift premium rate. Twelve (12) hour shifts shall not be worked except by prior permission of the Joint Conference Committee.

(b) Overtime shift work performed beyond an eight-hour shift from midnight Sunday to midnight Friday, except the 2nd Shift on Friday night, shall be paid for at one and one-half (1 1/2) times the regular shift premium rate for the 2nd and 3rd Shifts, to a maximum of 12 hours. After 12 hours, the rate shall be double time. In cases where the 2nd Shift on Friday continues into Saturday, work performed by such shift after midnight Friday shall be paid for at the rate of double the rates provided in Section 2.16 above.

(e) Shift work performed after midnight Friday to midnight Sunday shall be paid for at double the rates provided in Section 2.16 below. In cases where the 2nd Shift on Sunday continues into Monday, work performed by such shift after midnight Sunday shall be paid for at one and one-half (1 1/2) times the rates provided in Section 2.15 above.

(d) Shift work performed on holidays or days observed as holidays shall be paid for at twice the rates as provided in Section 2.16 below.

(e) No Employee shall work in two shifts except the job superintendent or supervision foreman, both of whom, if working, shall receive the regular overtime for all time in excess of one shift per day.

(f) A special shift will be established to take care of maintenance and service of existing facilities. This shift will allow a longer service day for each shop and serve as a vehicle to protect the union portion of maintenance and service work. This shift would start no later than 4:00 pm, and continue for 8 hours and allow (1/2) hour for lunch. An employee would be allowed an eight (8) hour non-work period between a special shift and a regular workday. Special shift differential would be fifteen percent (15%). Employee would be guaranteed eight (8) hours and would be given notice on preceding day that this shift was forthcoming.

(g) A 2nd shift does not require a 1st shift and a 3rd shift does not require a 1st or 2nd shift.

**Section    2.16.    Pay    Requirements.**

14

Employees will be **paid weekly** on the third day following the end of the weekly payroll period, no later than end of shift on that day, at the job site unless that day is a Holiday, then pay day would be the following day.

When an employee is discharged or laid off, he shall be paid no later than end of shift that day.

**Section 2.17. Termination Slip.** When an employee is discharged or laid off he shall be provided a termination slip showing condition of discharge; i.e., Voluntary quit, Reduction in force, Fired for cause, etc. Forms to be supplied by union.

## ARTICLE III

## TERM SUPERVISION
## STEWARDS APPRENTICES

**Section 3.1. Term of Agreement.** The term of this Agreement shall be sixty (60) months. This agreement shall become effective on June 1, 2002 and continue in force through May 31, 2007.

(a) **Effective June 1, 2002**
Total package will be $40.21.

15

Effective **June 1, 2003**
Total package will be **$42.21**

Effective **June 1, 2004**
Total package will be **$44.21**

Effective **June 1, 2005**
Total package will be **$46.21**

Effective **June 1, 2006**
Total package will be **$48.21**

**Section 3.2. Foremen.** On any job where six (6) or more men are working, a Local No. 23 U.A. member shall be a foreman. He shall receive seven percent (7%) additional pay above the basic wage rate.

**(a)** On any job where eleven (11) or more men are working, a local 23 area foreman shall be designated. The area foreman shall receive ten percent (10%) additional pay and the foreman shall receive seven percent (7%) additional pay above the basic wage rate.

**(b)** A Local 23 General foremen shall be employed on all jobs with twenty-five (25) or more men. They shall be paid twenty-five per-cent (25%) above the basic wage rate. When a supervisor is involved in shift work, he shall

16

receive the shift premium based on his supervi-sory pay.

**(c)** Additional foremen, for each additional ten (10) men after a General Foreman has been designated, shall be designated.

**(d)** On all jobs requiring groups of thirty (30) or more, the following rates shall apply:

| | |
|---|---|
| Journeyman | Base Rate |
| Foremen | plus 10% |
| Area Foremen | plus 15% |
| General Foremen | plus 25% |
| Superintendents | plus 35% |

**Section 3.3. Supervision Reduction.** Upon completion of the project, it shall be understood that the Employer may reduce, if required, the pay of the Employee to the journeyman scale. Overtime rate paid to Employees will prevail on Employees working in supervisory capacities.

**Section 3.4. Job and Shop Steward.** Stewards shall be required on all jobs with a total of five (5) or more Employees. Stewards shall not work in a supervisory capacity and shall not be paid more than journeyman's scale and shall be selected by the Local Union. A steward

17

shall be a working Employee appointed by the Business Manager. The Union shall notify the Employer of the appointment of each Steward, and the Employer, before laying off or discharging Steward, shall notify the union of his intention to do so. The Employer shall not discriminate against a Steward or lay him off or discharge him on account of action taken by him in the performance of his union duties.

**Section 3.5. Apprentice Rates.** Apprentice rates of pay working under the provisions of this Agreement for apprentices are as follows:

1st year - 40% of Journeyman rate
2nd year - 50% of Journeyman rate
3rd year - 60% of Journeyman rate
4th year - 70% of Journeyman rate
5th year - 80% of Journeyman rate

End of 5th year - 100%, provided the apprentice has completed the requirements of the J.A.C.

**(a)** All increases for apprentices will become effective on anniversary date of June 1 or September 1, provided the J.A.C. approves the raise or advancement.

18

# ARTICLE IV

# JURISDICTION - QUALITY CONTROL

**Section 4.1. Trade Jurisdiction.** Supervision, laying out, setting of sleeves, hangers, inserts, cutting of holes and openings, installation, placing erection, maintenance, repair and handling of all piping fixtures, equipment, appurtenances, and such necessary valve fittings, etc. are recognized as coming under the jurisdiction of the United Association of Plumbers & Pipefitters as defined by the fifty (50) Articles of Jurisdictional Award of the A.F.L.-C.I.O. (the Fifty Articles of Jurisdiction of the United Association are recognized and shall be a part of this Agreement). See Article XVIII of this Agreement.

**(a)** All piping installation within the Union's jurisdiction which has traditionally and in the past been cut, threaded, welded and/or fabricated by Employees in the bargaining unit shall be cut, threaded, welded and/or fabricated by said Employees either on the job site or in the Employer's shop.

19

**Section 4.2. Quality Control.** Quality Control (hereinafter QC). Any Journeyman assigned by his Employer to act as a QC Inspector, QC Lead Inspector, QC Supervisor, QC General Supervisor and Welding Supervisor and assumes the responsibility of the job shall be employed by the Employer on the following schedule.

(a) QC Inspectors shall receive the regular journeyman wage rate, per eight (8) hour day, and shall be paid proportionately for all over-time work.

(b) QC Lead Inspectors shall receive ten per-cent (10%) per hour more than the regular jour-neyman wage rate, per eight (8) hour day, and shall be paid proportionately for all overtime work.

(c) QC Supervisors shall receive fifteen percent (15%) per hour more than the regular journey-man wage rate, per eight (8) hour day, and shall be paid proportionately for all overtime work.

(d) QC General Supervisors shall receive twenty-five percent (25%) per hour more than the regular journeyman wage rate, per eight (8) hour day, and shall be paid proportionately for all overtime work.

(e) It is understood that all Quality Control per-sonnel and Welding Supervisors shall be mem-bers of the bargaining unit and that the provisions of this article shall only be applicable for work performed at Nuclear Generating Facilities or Fossil Fuel Generating Facilities and is not applicable for single purpose facilities used within a particular residential, commercial or industrial project.

**Section 4.3. Welding Supervision.** Welding Supervisors shall receive ten percent (10%) per hour more than the regular journeyman wage rate, per eight (8) hour day, and shall be paid proportionately for all over time work.

# ARTICLE V
# TOOLS - CLOTHING

**Section 5.1. Tools.** All tools and equipment of every description will be furnished by Employer with the exception of one pair of pli-ers, one six foot ruler and one torpedo level which shall be furnished by the Employee, it being understood that such tools and equip-ment furnished by Employer shall be of quality in keeping with all safety rules and regulations.

Employee will be responsible for tools in case of continual carelessness. Employer will furnish proper tool boxes and necessary locks and storage space on the job to properly protect tools and equipment. Whenever a job requires tool cribs, the cribs shall be manned by a Journeyman in Employees bargaining unit.

Careless use of tools and equipment shall be grounds for disciplinary action and/or dismissal by the Employer.

(a) In cases where the Employer does not furnish all service tools for the refrigeration Employee, the Employer shall pay the Employee a minimum tool rental of $1.00 per day, per present list of basic tools. The Employee will not be eligible for the tool rental until they have their recommended list. In the case where an employee starts working for a new Employer, the tool rental shall be pro-rated between the previous and new Employer, if applicable.

(b) These monies are to be paid during the last pay period of each quarter. Employers will make available a rider on their insurance policy to cover replacement cost of tools if Employees

22

wish to pay the premium.

(c) List of basic tools:
Set of box end wrenches
Set of open end wrenches
Various crescent wrenches
Refrigeration valve stem wrenches
Refrigeration flair nut wrenches
Refrigeration flair nut wrenches (sets)
Refrigeration pinch off tool (sets)
Refrigeration swedging tool
Copper tube cutter
1/2" and/or 3/8" drive socket set
Allen set screw wrenches
Various screw drivers (Phillips and Slot)
Steel or wooden rule
8" level
Charging and testing manifold gauge set with hoses
Pocket thermometer
Pliers (regular and needle nose)
Water pump pliers
Wire stripper
Voltage and amp tester
Ohm tester
Side cutter
Two pipe wrenches (12" & 14")
Presto lite soldering outfit

23

Flashlight
Ball pein hammer
Claw hammer
Crowbar
Hacksaw
Tool Box
Punches and chisels
Various files
Trouble light

**Section 5.2. Protective Clothing.** When welders are employed on a job, the Employer shall furnish protective clothing which shall include sleeves, aprons, gloves, etc. The welders shall be held responsible for this clothing, except for wear and tear or if stolen from the Employer's job location.

## ARTICLE VI
## TRAVEL EXPENSE

**Section 6.1. Employee Vehicle.** Employees shall be furnished transportation by Employer during working hours from shop to job, job to job, and job to shop (except Employee's use of own car for personal use).

24

**Section 6.2 Employee Mileage.** In cases where Employees are required to use their own car for transportation, from shop to job, job to job, and job to shop during working hours, they shall be paid mileage per government standard on a day to day basis.

**Section 6.3 Employee Car Restriction.** Employees shall not use their own car at any time or any conditions for hauling materials or tools.

## ARTICLE VII
## TRAVEL PAY
## OUTSIDE JURISDICTION

**Section 7.1. Travel Assignments.**

When traveling into a different jurisdiction, travel pay shall be paid at a rate of whatever the current IRS auto mileage allowance is per mile from the shop or home whichever is closer to the jobsite.

If the jobsite is more than 100 miles away and/or an overnight stay is required, then a room and $25.00 per day for meals will be provided by the Contractor. This rate is to be con-

25

sidered a minimum rate.

7.1(a) If an employee is riding in a contractor's truck, he may be picked up at a site mutually agreed on a direct route to the jobsite and shall receive $0.20 a mile from the pickup point.

**Section 7.2.**

Employees sent to supervise and install work in the jurisdiction of other U.A. Locals shall base their pay rate on the highest rate paid, and shall pay all negotiated fringe benefits to the L.U. #23.

**Section 7.3. Travel Time.**

Employees are expected to be on the jobsite at the normal starting and quitting time. If the job ends at less than an 8-hour day, the employee will be paid for actual hours worked and will be paid mileage to the shop or home, whichever is closer.

## ARTICLE VIII

## WORK REQUIREMENTS

**Sections 8.1. Work Requirement.** No Employee subject to the provisions of this

26

Agreement shall be required to work for any Employer who employs other than members of the United Association of the different branches of the Plumbing, Pipefitting, and Refrigeration and Air Conditioning trade. The Union will cooperate with the Employer in attempting to provide available skilled journeymen or apprentices.

**Section 8.2. Employer Subcontracting.** The Employer agrees, on a construction job site, to sub-contract to only those contractors having an agreement with the Northwestern Illinois Building and Construction Trades Council.

(a) Employers subject to this Agreement will employ only recognized tradesmen on the various other branches of work and trade and agree to sublet work only to recognized employers.

**Section 8.3. General Savings Clause.** It is the intention of the parties hereto to comply with all provisions of the National Labor Relations Act of 1947, as amended. Should any article or section of any article of this Agreement be declared unlawful, then such article or section of article shall become null

27

and void, and the parties agree to meet to negotiate substitute provisions therefore on thirty (30) days prior written notice, and the other legal provisions of the Agreement shall not be effected thereby. In the event there shall be enacted by applicable Federal or State legislation or regulation, which administrative body now in existence or hereafter created such legislation or regulation which is at variance with the terms of the Agreement shall to that extent be deemed to modify the provisions of this Agreement.

## ARTICLE IX

## STATE AND FEDERAL INSURANCE

**Section 9.1.    State & Federal Insurance.** Employer agrees to carry, at all times, Worker's Compensation and pay all required Employer contributions for state and federal unemployment insurance on all Employees in the bargaining unit and such other Employer contributions and taxes as may be required of employers by federal, state, or municipal governments or agencies and for old age and Social

28

Security benefits. Employers will file with Union the various account numbers of these funds and satisfactory evidence of insurance coverage in the form of valid certificates of insurance indicating coverage of the Employees in the bargaining unit. All Employers will be subject to the Building Trades Agreement of the Northwestern Illinois Building and Construction Trades Council, AFL-CIO of Rockford, Illinois.

## ARTICLE X

## APPRENTICES

**Section 10.1. Apprentices.** Apprentices will be placed in shops and be subject to the rules and supervision of the Joint Apprenticeship Committee representing all branches of the Plumbing, Pipefitting and Refrigeration and Air Conditioning Industry, and all apprentices shall be subject to the rules of the Union, and the provisions of this Agreement.

**Section 10.2 Apprentice Ratios**

Three separate lists are to be established, one (1) each for Plumbers, Pipefitters, and HVAC

29

call or vote to cast a full vote for its representatives and it shall be counted as though all were present and voting.

(a) Powers and Duties. The Joint Conference Committee shall have jurisdiction to settle all disputes and grievances that might arise between Employers and Employees and carry out the terms of this Agreement. The Committee shall be the arbitration vehicle and shall have full power to enforce this Agreement and enforce working rules for the parties subject to this Agreement. It shall have power to impose such penalties from time to time, as it may deem advisable. It shall have the right to summon any individual subject to this Agreement as principal or witness to a dispute, such summons to be served through the Chairman or Secretary of the Joint Conference Committee in a manner to be prescribed by the Committee.

(b) Disputes and Grievances. All disputes and grievances must be arbitrated, and the decision of the Committee with respect thereto shall be final and binding on all parties subject to this Agreement and there shall be no work stoppage or abandonment of the work during such arbi-

tration. Nothing contained herein shall prevent any Employer from dealing directly with his Employee with respect to any grievance or dispute.

(c) Procedure. Should a dispute or grievance arise between the parties hereto or between an Employer and an Employee, or an officer or representative of either party, or between members of one party and members of the other party, such dispute or grievance shall be submitted within two pay periods in writing to the respective Chairman of the Employer Negotiating Committee and Business Manager of the Union with a copy to the Joint Conference Committee. Should the Employer Chairman or Business Manager fail to agree and dispose of the matter within twenty-four (24) hours, the dispute or grievance shall then be taken up by the Joint Conference Committee for adjudication. The Committee shall hear the evidence and render its decisions as expeditiously as possible. All decisions shall be determined by a majority vote. Should the committee be unable to decide the issue, it shall immediately refer the matter to the Umpire hereinafter provided for, and the Umpire's decision shall be final and binding upon the parties

hereto. Under no circumstances is work to be stopped or the manner of performing the same interfered with pending the result of the arbitration.

**(d) Vacancies.** Should a member of the Joint Conference Committee be unable to serve because of suspension, resignation or any other reason, his successor shall be selected by and from the organization in which he holds membership.

**(e) Failure of Committee to Meet.** Failure on the part of Joint Conference Committee to meet as provided in this Agreement and to present and maintain a quorum for the consideration of any matter referred to it shall be a violation of this Agreement on the part of the Association or the Union whose members on said Committee failed to have present sufficient representation to transact business as provided for in this agreement and the subject matter or dispute involved may then be referred by either of the parties hereto to the Umpire provided for herein whose decisions shall be final and binding upon all parties.

**(f)** Compensation and Expenses.

Compensation for services rendered by members of the Joint Conference Committee may be fixed, determined and paid by the party hereto in which said representative holds membership, and expenses incurred by the Committee, outside of compensation to its members in carrying out its functions shall be borne equally by the parties to this Agreement.

**(g) Umpire.** The Joint Conference Committee shall immediately upon the execution of this Agreement select an Umpire and a successor to act hereunder during the term of this Agreement.

**(h) Quality work.** By joint agreement, both the Employer and Union recognize the value and importance of quality in workmanship, and conduct on the job by Employees. An effort to avoid negligent acts in these areas by Employees shall be encouraged by all parties concerned. Repeated negligent acts on the part of Employees shall be cause for review and action by a Joint Committee composed of equal representation of Employers and Union.

# ARTICLE XIII

## CODES - CEP

**Section 13.1. Codes.** It shall be the policy of all parties of this Agreement to make all plumbing, heating, piping and cooling installations in conformity with the governing codes.

**13.2. Continuing Education Program.** Each Journeyman employed by an employer covered by the Agreement shall be required to attend Continuing Education Programs (CEP's). Minimum CEP attendance shall be ten (10) hours per calendar year. CEP's shall not be a condition of employment. Local 23 will exchange (CEP) information with PICRA quarterly. Four (4) of the ten (10) hours shall be mandatory safety training.

# ARTICLE XIV

## FUNDS

**Section 14.1. Trust Funds.** The parties have heretofore established the following Funds:

1. Rockford Pipe Trades Industry Pension Fund, Trust Agreement effective April 1, 1966.

2. Health and Welfare Fund, Trust Agreement effective January 1, 1957.

3. Journeyman and Apprentice Training Fund, Trust Agreement effective January 1, 1957.

4. Piping Industry Council of the Rockford Area (Education Fund as of June 1, 1991) Trust Agreement effective October 1, 1964.

5. The Rockford Pipe Trades Industry 401(k) Plan, Trust Agreement effective January 1, 1998.

**Section 14.2. Inseparability.** The above Funds shall continue as part of the Agreement, and it is hereby mutually agreed that the Education Fund under Article XIV, and the Union's Working Dues under Article XIV, is a distinct contract and constitutes one inseparable and indivisible Collective Bargaining Agreement in this contract and legality affecting either of these provisions shall nullify both of these Funds in total.

**Section 14.3. Employer Contributions.** The Employer shall contribute to each respective Fund for each hour paid to each Employee covered by this Agreement.

Contributions shall be made as follows:

1. Contributions for straight time-as stated below

2. Contributions for time and one-half-1 1/2 times rate below

3. Contributions for double time-two times rate below

4. Pension Contributions are not required to be paid for first year apprentices.

Effective date:
6-1-2002

| | |
|---|---|
| Pension | $5.28 |
| H&W | $3.83 |
| Training | .50 |
| Education | .22 |
| Joint Venture in Safety | .03 |
| International Training Fund | .05 |

| | |
|---|---|
| 6-1-2003 | To be announced |
| 6-1-2004 | To be announced |
| 6-1-2005 | To be announced |
| | .05¢ to Education Fund |
| 6-1-2006 | To be announced |

38

**Section 14.4. Education Fund.** As of January 1, 1992, any contractor under the Power House Maintenance Modification Agreement that does not contribute to the Education fund shall pay monies allotted to that Education Fund into the Apprentice Training Fund.

**Section 14.5. Contribution Payments.** Contributions to each of the foregoing funds shall be due and payable on or before the tenth (10th) day of the following month, covering hours paid to each employee through the last payroll period in the prior calendar month. Each Employer shall file a monthly report in the form established by the regulations of the Fund.

**Section 14.6. Contribution Delinquencies.** Delinquency or Failure to Make Contributions or to File Report:

Any Employer who fails to report or to make contributions due to any of the foregoing Funds before the fifteenth (15th) day of the month in which it is due, or who issues an insufficient check shall be considered delinquent, etc., therefore, obligated and liable and subject to

39

the following:

**(a)** Each delinquent Employer shall pay to the Fund involved, interest on unpaid contributions at the rate of Prime + two percent (2%) per annum from the first day of the month following the month in which they are due until paid.

**(b)** A delinquent Employer shall pay all reasonable attorney's fees, court costs, interest, audit costs and other expenses incurred in the enforcing of collection for these Funds.

**(c)** A delinquent Employer shall be liable to any Employee affected by such delinquency for a sum equal to the value of the benefits lost to the Employee by reason of delinquency of such Employer.

**(d)** A delinquent Employer shall be liable to reimburse any Fund for the cost or value of any benefits which may be made available by the Trustees to any Employee affected by the failure of the delinquent to contribute or to report to the Fund involved.

**(e)** The union shall remove employees covered by this Agreement from employment with a delinquent Employer providing advance notice

of not less than forty-eight (48) hours is given of such action to the delinquent Employer. Such removal of Employees and cessation of work by employees for such delinquent Employer shall continue until the administrator of the Fund involved verifies that there is no money owing to the Fund by such Employer.

**(f)** When Employees are removed from an Employer's shop because of delinquency in payment of fringe benefits or wages, the Employer shall pay to all such removed Employees sixteen (16) hours, including time worked on the date of removal, if any, at their regular rate of pay plus fringe contributions, in the same manner as if they were employed on the job. When the delinquent wages and/or fringe contributions are paid and the account is cleared in full, and the Employees notified to return to work prior to said sixteen (16) hours, then and then only, the Employer shall be liable only for those hours the Employees were off the job because of such violation of contract, and provided further, that if they are not available to return to work within two (2) hours of such notice, they shall receive pay for only two (2) hours after receipt of such notice by the union.

(g) Men removed from the job may accept a work order to a different Employer and still be eligible to be transferred back to the Employer from which they were removed, providing the delinquencies were corrected and the transfer effected within sixteen (16) hours of the removal time and provided such Employees shall not be reimbursed under this Section for time they were paid while working for another Employer.

## Section 14.7. Bond Requirement.

(a) Each Employer employing union employees shall furnish a surety bond in the following amounts.

One (1) to six (6) employees $20,000; Seven (7) to twenty (20) employees $60,000; Twenty-One (21) employees and over $100,000.

This surety bond will guarantee payment of all fringe benefits contractually due hereunder including working dues.

(b) The surety bond shall be on bond forms approved by the parties hereto.

(c) There shall be no men referred until bond on approved bond form has been furnished.

42

(d) The surety bond supplied by the Employer shall be referred to the Joint Board of Trustees administering the various Trust Funds for disposition.

## Section 14.8. Reporting Errors - Audit.

Whenever an Employer claims that his failure to make the required contributions was due to honest or clerical error and requests relief for that reason, it shall be considered, providing the Employer agrees in writing, to an audit of his records by an auditor provided by the Joint Board of Trustees. If the audit reveals to the Trustees that such failure to pay was not due to honest mistake or clerical error, then the Employer shall pay the cost of the audit; any Employer shall be entitled to credit for or refund of money paid to any Trust Fund by reason of clerical error or mistake, and trustees are authorized to refund such monies. The acceptance of any contributions from any Employer shall not release or discharge him from the obligation to contribute for all hours paid under this Agreement for which no contributions have actually been received notwithstanding any statement, restriction or qualification appearing on any check from any Employer.

43

**Section 14.9. Trust Incorporation.** Each of the foregoing Trust Agreements are incorporated herein and made a part of this Collective Bargaining Agreement and are made counterpart to each other.

**Section 14.10. Trust Payments.** It is further agreed that payments to the above Trusts will continue at the rates set forth above until changed or amended by agreement of the parties to this Agreement.

**Section 14.11. Discontinuation.** In the event the monies normally paid to the Pension Fund and Health and Welfare Fund are discontinued, the amounts paid to those funds for the Employees in the bargaining unit shall be added to the Employees' wages. The Training Fund and Education Funds shall remain to be paid to their respective Funds.

**Section 14.12. Dues Check-Off.** During the life of this Agreement and in accordance with the provisions of Sections 302 (c) of the Labor-Management Relations Act, 1947, as amended, and within the terms of the Authorization of Check-Off of Dues from the Employees, the Employer agrees to deduct Union initiation fees

44

and membership dues levied in accordance with the Constitution and By-laws of the Union from the pay of each Employee who executes or has executed and delivered to the Employer a valid authorization for Check-Off of Dues.

**Section 14.13. Building Trades Deduction.** The Employer agrees to deduct three cents ($.03) per hour worked for the Northwestern Illinois Building and Construction Trades Council assessment.

**Section 14.14. Target Program Deduction.** The Employer agrees to deduct ($.25) per hour worked for the U.A. Local 23 Target Program.

**(a)** The U.A. Local 23 Target Program and this deduction shall be forwarded along with the one designated for the Northwestern Illinois Building and Construction Trades Council Assessment. In the event the monies normally paid to U.A. Local 23 Target Fund are discontinued, the amounts paid for those funds for the Employees in the bargaining unit shall be added to the Employees wages. This fund may be terminated at the sole discretion of the Union and any remaining funds in the Target Program shall remain in the program until expended for the

45

above referenced use.

**(b)** To qualify for the Target Program the contractor must be a participant to the program prior to the awarding of the contract to the targeted job.

## Section 14.15 Political Action Check-Off.

During the life of this Agreement, the Employer agrees to deduct from the pay of each Employee any of the following: 1) any applicable uniform dues assessed pursuant to the by-laws of the Illinois Pipe Trades Association or the Union and authorized pursuant to a valid dues check-off authorization, 2) any applicable uniform political action contribution assessed pursuant to the By-Laws of the Union or the Illinois Pipe Trades Association and authorized pursuant to a valid dues check-off authorization, and 3) a voluntary political action contribution of $.01 per hour worked (or such other uniform amount upon notice from the Union and authorization in writing from individual Employees) to the U.A. PAC Fund for those Employees who authorize the deduction of this amount as a political action contribution, by signing a check-off authorization card. Any

such amounts collected shall be sent to the Union on a monthly basis and shall be accompanied by a list of names of those Employees for whom such deductions have been made and the amount deducted for each such Employee. Collections for voluntary political action contributions pursuant to 3) above are voluntary in nature and will be transmitted by the Union to the U.A. PAC Fund.

Employees can only change the amount of deductions once a year, Employers may write one check to cover all Union Member deductions (PAC, Target, Building Trades, Union Dues).

## ARTICLE XV

## NON-DISCRIMINATION

**Section 15.1.  Compliance.**  The parties to this Agreement acknowledge that they are subject to State and Federal law and municipal Ordinances regarding equal opportunity and fair employment and, therefore, will jointly take the necessary steps to comply with these laws and ordinances to assure, within the scope of this Agreement, compliance with equal oppor-

tunity and fair employment practice laws and ordinances and agree the employment referral, or selection of all Employees shall be on the basis of qualifications without regard to race, color, sex, age, handicap, religion, national origin and ancestry.

**Section 15.2. Safety.** All work of the Employers shall be performed under safety conditions which conform to those contained in all applicable Federal, State and Municipal statutes, rules, and regulations. All Employers and Employees are required to comply with such regulations and any additional safety rules posted by the Employer and agreed to be reasonable by the representatives of the Union. Any disregard of the applicable Federal, State or Municipal rules and regulations or posted safety rules will subject the Employee to disciplinary action; and should the Employer, after being given notice by the Employee of a violation of the above and the Employer does not immediately correct said violation, the Employee is free to leave the job site or refuse to perform work which is in violation of the above.

(a) Employees should be encouraged to partic-

48

ipate in certain regularly scheduled safety related seminars provided by the Union, Employer, or Employer Trade Organization. These seminars will be scheduled after the regular working hours and in sufficient advance time to provide for easy scheduling.

**Section 15.3. Change Notice.** This agreement shall be in effect through May 31, 2007 and thereafter continue in effect from year to year unless either party hereto shall notify the other in writing sixty (60) days prior to May 31, 2007 or May 31 of any additional contract year, of any intention to negotiate any changes or amendments to this agreement.

Such notice shall be sent by registered mail to respective bargaining groups.

## ARTICLE XVI

## NO STRIKE - NO LOCKOUT

**Section 16.1. No Strike.** During the term of this Agreement, the Union will not cause, permit, or authorize in any fashion, nor will any of the members of the Union take part in any strike, sit-down, sympathy strike, slow-down or

49

any other kind of work stoppage or interference with the work, whether total or partial. Any and all disputes arising between the Union and the Employer or under the terms of this Agreement shall be handled as provided in Article XII herein. There shall be no work stoppage due to unauthorized or illegal strikes, lockouts, disputes or grievances.

**Section 16.2. No Lockout.** The Employer agrees that during the term of this Agreement, the Employer will not engage in any lockout.

**Section 16.3. Enforcement.** Nothing in this Agreement shall be construed to limit or restrict the Union or Employer's right to pursue any and all remedies available under law or under Article XII of this Agreement in the event of a violation of this Agreement.

## ARTICLE XVII
## MANAGEMENT RIGHTS

**Section 17.1. 8 for 8.** It is the intent of all parties to this Agreement that the employee will furnish a full, fair day's work for a day's pay.

**Section 17.2. Management Control.**

Management shall be the sole judge of the size and composition of the work force. Management shall have the prerogative of controlling its operations, introducing new or improved methods or facilities and changing methods or facilities, subject to the limitations set forth in this Agreement.

The Employer is vested with the right to relieve Employees from duty because of lack of work or other legitimate reasons, to promote, suspend, demote, transfer, discipline, or discharge for just cause.

**Section 17.3. Moonlighting.** The Union shall not sanction any employee performing any plumbing, heating, cooling or pipe work after his regular hours for other than his current Employer. Any employee violating this Section shall be dealt with in accordance with the provisions contained in Article XII.

## ARTICLE XVIII
## TRADE JURISDICTION

**Section 18.1. Work Jurisdiction.** The following is the jurisdiction of work of the United

Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada quoted from the UA Constitution as revised and amended at Las Vegas, Nevada, August 12-16, 1991.

**1.** All piping for plumbing, water, waste, floor drains, drain grates, supply, leader, soil pipe, grease traps, sewage and vent lines.

**2.** All piping for water filters, water softeners, water meters, and the setting of same.

**3.** All cold, hot and circulating water lines, piping for house pumps, cellar drainers, ejectors, house tanks, pressure tanks, swimming pools, ornamental pools, display fountains, drinking fountains, aquariums, plumbing fixtures and appliances, and the handling and setting of the above mentioned equipment.

**4.** All water services from mains to buildings, including water meters and water meter foundations.

**5.** All water mains from whatever source, including branches and fire hydrants, etc.

**6.** All down spouts and drainage areas, soil pipe, catch basins, manholes, drains, gravel

basins, storm water sewers, septic tanks, cesspools, water storage tanks, etc.

**7.** All liquid soap piping, liquid soap tanks, soap valves and equipment in bath and washrooms, shower stalls, etc.

**8.** All bathroom toilet room and shower room accessories, i.e., towel racks, paper holders, glass shelves, hooks, mirrors, cabinets, etc.

**9.** All lawn sprinkler work, including piping, fittings and lawn sprinkler heads.

**10.** All sheet lead lining for x-ray rooms, fountains, swimming pools or shower stalls, tanks for vats for all purposes and for roof flashings in connection with pipe fitting industry.

**11.** All fire stand pipes, fire pumps, pressure and storage tanks, valves, hose racks, fire hose, cabinets and accessories, and all piping for sprinkler work of every description.

**12.** All block tin coils, carbonic gas piping, for soda fountains and bars, etc.

**13.** All piping for railing work, and racks of every description, whether screwed or welded.

**14.** All piping for pneumatic vacuum cleaning

systems of every description.

**15.** All piping for hydraulic, vacuum, pneumatic, air, water, steam, oil, or gas, used in connection with railway cars, railway motor cars, and railway locomotives.

**16.** All marine piping, and all piping used in connection with ship building and ship yards.

**17.** All power plant piping of every description.

**18.** The handling, assembling and erecting of all economizers, superheaters, regardless of the mode or method of making joints, hangers, and erection of same.

**19.** All internal and external piping on boilers, heaters, tanks and evaporators, water legs, water backs, and water grates, boiler compound equipment, etc.

**20.** All sootblowers and soot collecting piping systems.

**21.** The setting, erecting and piping for all smoke consuming and smoke washing and regulating devices.

**22.** The setting, erecting and piping of instruments, measuring devices, thermostatic con-

54

trols, gauge boards, and other controls used in connection with power, heating, refrigerating, air conditioning, manufacturing, mining and industrial work.

**23.** The setting and erecting of all boiler feeders, water heaters, filters, water softeners, purifiers, condensate equipment, pumps, condensers, coolers and all piping for same in power houses, distributing and boosting stations, refrigeration, bottling distilling and brewing plants, heating, ventilating and air conditioning systems.

**24.** The setting and erecting of all underfeed stokers, fuel burners, and piping, including gas, oil, power fuel, hot and cold air piping; and all accessories and parts of burners and stokers, etc.

**25.** All ash collecting and conveyor piping systems, including all air washing and dust collecting piping and equipment, accessories and appurtenances and regulating devices, etc.

**26.** The setting and erection of all oil heaters, oil coolers, storage and distribution tanks, transfer pumps and mixing devices, and piping thereto of every description.

55

27. The setting, erecting and piping of all cooling units, pumps, reclaiming systems and appurtenances, in connection with transformers, and piping to switches of every description.

28. All fire extinguishing systems, and piping, whether by water, steam, gas or chemical, fire alarm piping, and control tubing, etc.

29. All piping for sterilizing, chemical treatment, deodorizing, all cleaning systems of every description, and laundries for all purposes.

30. All piping for oil, or gasoline tanks, gravity and pressure lubricating and greasing systems, air and hydraulic lifts, etc.

31. All piping for power or heating purposes, either by water, air, steam, gas, oil, chemicals, or any other method.

32. All piping, setting and hanging of all units and fixtures for air conditioning, cooling, heating, roof cooling, refrigerating, ice making, humidifying, de-humidifying, dehydrating, by any method, and the charging and testing, servicing of all work after completion.

33. All pneumatic tube work, and all piping for carrying systems by vacuum, compressed air,

56

steam, water, or any other method.

34. All piping to stoves, fire grates, blast and heating furnaces, ovens, driers, heaters, oil burners, stokers and boilers and cooking utensils, etc., of every description.

35. All piping in connection with central distributing filtration treatment stations, boosting stations, waste and sewage disposal plants, central chlorination and chemical treatment work, and all underground supply lines to cooling wells, suction basins, filter basins, settling basins, and aeration basins.

36. All process piping for refining, manufacturing industrial, and shipping purposes, of every character and description.

37. All air piping of every description.

38. All temporary piping of every description in connection with building and construction work, excavating and underground construction.

39. The laying out and cutting of all holes, chases and channels, the setting and erection of bolts, inserts, stands, brackets, supports, sleeves, thimbles, hangers, conduit and boxes,

57

used in connection with pipe fitting industry.

40. The handling and setting of boilers, setting of fronts, setting of soot blowers, and attaching of all boiler trimmings.

41. All pipe transportation lines for gas, oil, gasoline, fluids and liquids, water aqueducts, and water lines, and booster stations of every description.

42. All acetylene and arc welding, brazing, lead burning, soldered and wiped joints, caulked joints, expanded joints, rolled joints, or any other mode or method of making joints in connection with the pipe fitting industry.

43. Laying out, cutting, bending and fabricating of all pipe work of every description, by whatever mode or method.

44. All methods of stress relieving of all pipe joints made by every mode or method.

45. The assembling and erection of tanks, used for mechanical, manufacturing or industrial purposes, to be assembled with bolts, packed or welded joints.

46. The handling and using of all tools and

equipment that may be necessary for the erection and installation of all work and materials used in the pipe fitting industry.

47. The operation, maintenance, repairing, servicing and dismantling of all work installed by journeymen members of the United Association.

48. All piping for cataracts, cascades, (i.e. artificial water falls), make-up water fountain, captured waters, water towers, cooling towers and spray ponds used for industrial, manufacturing, commercial or for any other purposes.

49. Piping herein specified means pipe made from metals, tile, glass, rubber, plastics, wood, or any other kind of materials, or product manufactured into pipe, usable in the pipe fitting industry, regardless of size or shapes.

50. All piping for artificial gases, natural gases, and holders and equipment for same, chemicals, minerals, and by-products and refining of same, for any and all purposes.

**Section 18.2.  Hoisting.**  The Employer hereby assigns the operation of (1) hoisting and portable engine on building and construction

work including, but not limited to, fork lifts, end loaders and hoists, to Employees covered by this collective Bargaining Agreement, providing these engines are used in conjunction with the work of the trade as a time saving installing device to hoist or haul material and equipment to a holding position for permanent attachment to said building or construction, and (2) operation of pumps and welding machines in conjunction with the work of the trade.

**Section 18.3. Work Inspection.** Primary visual inspection that is part of a systematic quality control program that governs the fabrication, installation, renovation, maintenance or repair of work that is under the jurisdiction of the U.A. shall be performed by properly certified inspectors who are United Association members.

## ARTICLE XIX
## TERM & EFFECTIVE DATE

**Section 19.1. Term of Agreement.** Term of this Agreement will be from June 1,2002 through May 31,2007 , but in the event of any unforeseen economic conditions that may arise

or any provision or agreements that its enforcement created undue hardships on parties to this Agreement, the recognized representatives of Negotiating Committee of the respective parties to the Agreement may by sixty (60) days written notice, request review of such portions of Agreement for recommendations for such actions as may be approved by the Negotiating Committee.

**Section 19.2. Effective Date.** This Agreement entered into this 1st day of June, 2002 and shall become effective June 1, 2002

## JOINT LABOR-MANAGEMENT
## UNIFORM
## SUBSTANCE ABUSE PROGRAM

I. POLICY STATEMENT

The parties recognize the problems created by drug abuse and the need to develop prevention and treatment programs. The Employer and the Union seek to protect people and property, and to provide a safe working environment.

The purpose of the following program is to establish and maintain an alcohol and drug-free, safe, healthy work environment for all employees.

## II. DEFINITIONS

a.    Employer Premises: The term "Employer Premises" as used in this policy includes all property, facilities, land, buildings, structures, automobiles trucks and other vehicles owned, leased or used by the employer. Construction job sites for which the employer has responsibility are included.

b.    Controlled Substances: The following term "Controlled Substances" means the following substances: alcohol, marijuana, cocaine, opiates, amphetamines and phencyclidine (PCP), (including look-alike drugs and designer drugs) and drug paraphernalia in the possession of or being used by an employee on the job.

c.    Employee: An "employee" is any individual who performs work for the Employer under the terms of a collective bargaining agreement.

d.    Reasonable Cause: Reasonable cause shall be defined as aberrant or erratic behavior

such as noticeable imbalance, incoherence, or disorientation.

## III. BASIS FOR DRUG TESTING

Random drug testing of employees is prohibited. The Employer may conduct drug testing under the following circumstances:

a.    A pre-employment drug test may be administered to all applicants for employment.

b.    A test may be administered in the event a supervisor has a reasonable cause to believe that the employee has reported to work under the influence, or is or has been under the influence while on the job; or has violated this drug policy. The decision to test must be based on a reasonable and articulate belief that the employee is using a prohibited drug on the basis of specific and contemporaneous physical behavioral or performance indications of probable drug uses. At least two of the contractors' supervisors, one of whom is trained in the detection of possible symptoms of drug use, shall substantiate and concur in the decision to test an employee. Only one trained supervisor is required to substantiate the decision to test for contractors with 20 or fewer employees. A writ-

ten report describing the employee's condition shall be completed, dated, and signed by the observer(s) and copies made available to the employee and the Union. In such cases, the employee's immediate supervisor(s) may, in a confidential manner, order the employee to submit to a substance abuse testing. During the process of establishing reasonable cause for testing, the employee has the right to request his on-site representative to be present. Third-party reports that an employee is impaired in his duties through the use of prohibited drugs shall not constitute cause, but may because for the observation of the employee.

c.    Testing may be required if an employee is involved in an accident which results in injury to any person requiring medical treatment other than minimal first aid, or property damage in excess of $100.00, where there is a reasonable basis to believe that the accident was caused by an act or omission on the part of the employee.

d.    Testing may be required as part of a follow-up to counseling or rehabilitation for substance abuse, for up to a one (1) year period.

## IV.    TESTING PROCEDURES

a.    Drug testing will be conducted by an independent accredited laboratory (National Institute on Drug Abuse [NIDA] and/or College of American Pathology). The Employer will bear the cost of all testing procedures.

b.    Urine samples shall be collected using the split sample method. At the time of donation one portion of the original urine sample shall be kept secure and chemically stable and made available for verification of laboratory testing results.

c.    The handling and transportation of each specimen will be done in a manner to insure that strict chain of custody procedures are maintained and properly documented.

d.    Any employee testing positive shall have the right to have the secured portion of his/her urine sample independently examined by a certified laboratory of the employee's choice at the employee's expense, within thirty (30) days of the notice of a positive confirmation test.

e.    All drug testing shall be conducted by an initial process incorporating an enzymmunoassay technique or radio-enzymoinmunoassay technique and must be confirmed by gas chromatography/mass spectrometry (CS/MS) or some equally sensitive confirmatory technique as certified by NIDA. A positive drug test result shall mean test levels, on both the screening test and the confirmatory test, which are recognized as positive by the U.S Department of Health & Human Services in its Mandatory Guidelines for Federal Workplace Drug Testing Programs.

f.    All alcohol testing must be performed using approved evidential breath testing devices ("EBTs") administered by qualified technicians. If the screening test for alcohol is positive, a confirmation test must be performed. A positive alcohol test shall mean .04 blood alcohol content.

g.    The results of an employee's drug or alcohol test are confidential and will be disclosed only to the employee and the Employer. Further disclosure of the test results will only occur when the employee has provided written consent to such disclosure.

66

V.    **PRESCRIPTION DRUGS**

Employees using prescription medication which may impair the performance of job duties, either mental or motor functions, must immediately inform their supervisors of such prescription drug use. For the safety of all employees, the Employer will consult with the employee and his/her physician to determine if re-assignment of duties is necessary. The employer will attempt to accommodate the employee's needs by making an appropriate re-assignment. However, if a re-assignment is not possible, the employee will be placed on temporary medical leave until released as fit for duty by the prescribing physician.

VI.    **RULES/DISCIPLINARY ACTIONS**

a.    _Rules:_ All employees must report to work in a physical condition that will enable them to perform their jobs in a safe and efficient manner. Employees shall not:

1.    Use, possess, dispense or receive prohibited substances on or at the job site; or

2.    Report to work under the influence of alcohol or controlled substances.

67

b. <u>Discipline:</u> When the employer has reasonable cause to believe an employee is under the influence of a prohibited substance, for reasons of safety, the employee may be suspended until test results are available. If the employee has been suspended and no test results are received after three (3) working days, the employee, if available, shall be returned to work with back pay. If the test results are negative, the employee shall be reinstated with back pay. In all other cases:

1. Employees who have not voluntarily come forward, and who test positive for prohibited substances will be subject to discipline up to and including discharge.

2. Employees who refuse to cooperate with a request that they submit to a drug/alcohol test will be subject to discipline up to and including discharge provided that the request for the drug/alcohol test is proper under this policy.

3. Employees found in possession of prohibited substances or paraphernalia will be subject to discipline up to and including discharge.

4. Employees found selling or distributing

68

prohibited substances will be subject to discipline up to and including discharge.

5. Employees found under the influence of prohibited substances while on duty, and/or operating an Employer vehicle will be subject to discipline up to and including discharge.

VII. **REHABILITATION AND EMPLOYEE ASSISTANCE PROGRAM**

Employees are encouraged to seek help for a drug problem before it deteriorates into a disciplinary matter. If an employee voluntarily notifies supervision that he or she may have a substance abuse problem, the employer will assist in locating a suitable employee assistance program for treatment, and will counsel the employee regarding medical benefits that may be available under a health and welfare insurance program. If treatment necessitates time away from work, the Employer shall provide for the employee to take an unpaid leave of absence for purpose of participation in an agreed upon treatment program. An employee who successfully completes a rehabilitation program shall be reinstated to hrs/her former employment status, if work for which he/she is qualified

69

exists.

Employees returning to work after successfully completing the rehabilitation program can be subject to drug tests without prior notice for a period of one (1) year. A positive test will then result in disciplinary action as previously outlined in the policy and program.

This joint labor/management uniform substance abuse program will not take effect for pre-hire testing until September 1, 1997 at which time the employers signatory to this agreement will be allowed thirty (30) days to test current employees under the collective bargaining agreement.

For Union:

Plumbers & Pipefitters
Local Union 23
Rockford, Illinois

_Darryll Russell_
Darryll Russell, Business Manager

_Bob E. Hastings Jr._
Bob Hastings Jr., Business Agent

_Bob Wooden_
Bob Wooden

_Ryan Marshall_
Ryan Marshall

_Jay Fiorello_
Jay Fiorello

70

71

For Employer

Piping Industry Council
Rockford Area

*[signature]* Gary Statdfield

Gary Statdfield, Chairman

*[signature]* Jim Zweep

Jim Zweep

*[signature]* Lenny Hill

Lenny Hill

*[signature]* Gene Mead

Gene Mead

*[signature]* Kent Logan

Kent Logan

*[signature]* Greg Smeltzer

Greg Smeltzer

72

# INDEX

| Subject | Page |
|---|---|
| **A** Apprentice Placement | 29 |
| Apprentice Rates | 18 |
| Apprentice Ratios | 30 |
| **B** Bond Requirements | 42 |
| Breaks | 11 |
| Building Trades Deduction | 45 |
| **C** Change Notice | 49 |
| Codes | 36 |
| Compliance | 47 |
| Continuity of Employment | 7 |
| Continuing Education | 36 |
| **D** Date of Agreement | 1 |
| Delinquencies | 39 |
| Double Time | 9 |
| Dues Check Off | 44 |
| **E** Effective Date | 60 |
| **F** Foreman | 16 |
| **G** Grievances | 32 |
| **H** Hours of Work | 5 |
| **I** Installation Standards | 36 |
| Insurance | 28 |
| **J** Joint Conference Committee | 31 |
| – Disputes | 32 |
| – Grievances | 32 |
| – Powers & Duties | 32 |
| – Umpire | 35 |
| – Vacancies | 32 |
| **L** Legal Conformity | 34 |
| Lockouts | 27 |
| **M** Management Rights | 49 |
| Mileage | 50 |
| Moonlighting | 51 |
| **O** Overtime | 9 |
| – Holidays & Sundays | 5 |
| – Regular Work Day | 5 |
| – Saturdays | 7 |
| – Service | 7 |
| Out of Jurisdiction Work | 14 |
| **P** Pay Day | 25 |
| Pay Scales | 18 |
| – Apprentices | 15 |
| – Journeyman | 15 |
| – Supervision | 16 |

73

## AMENDMENT # 1 TO THE LABOR AGREEMENT

The United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada Local 23 and the Piping Industry Council Rockford Area hereby adopt the following amendments to the Labor Agreement in effect through May 31, 2007 effective July 1, 2004:

1) *Section 14.6(a) and (b)* are amended in their entirety to state as follows:

   (a)     Each delinquent Employer shall pay to the Fund involved: 1) liquidated damages in the amount of five percent (5%) of delinquent contributions, and 2) interest on unpaid contributions at the rate of Prime + (2%) per annum from the first day of the month following the month in which they are due until paid.

   (b)     A delinquent Employer shall pay all reasonable costs incurred by the Trust Funds in collection of any unpaid contributions, liquidated damages or interest charges. Reasonable costs include but are not limited to attorney's fees, court costs, accounting fees and any other litigation expenses.

2) *Section 14.7* is amended in its entirety to state as follows:

**Section 14.7. Bond Requirement.**

   (a)     Each Employer employing employees covered by this Agreement shall furnish a surety bond in the following amounts.

           One (1) to six (6) employees $20,000.00; Seven (7) to twenty (20) employees $60,000; Twenty-Once (21) employees and over $100,000.

   This surety bond will guarantee payment of wages, union dues payable pursuant to a valid dues check-off and contributions due to the Trust Funds. In the event the surety bond is insufficient to pay for all unpaid amounts, the bond proceeds will be used to first pay wages. Once wages are paid, any remaining proceeds shall be paid pro-rata to the Union and the Trust Funds.

   (b)     The surety bond shall be on bond forms approved by the parties hereto.

   (c)     There shall be no men referred by the Union to an Employer who has not furnished an approved bond. Further, the Union may, in its discretion, remove employees covered by this Agreement from employment with the an Employer who has not furnished a bond pursuant to the procedure in Sections 14.6(e), (f) and (g).

PIPING INDUSTRY COUNCIL, ROCKFORD AREA

By: *Gary Stutsfuld*          6-21-04
_____          Date

Title: *Negotiating Committee Chairman*


UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA

By: *Darryl Russell*          6-21-04
_____          Date

Darryl Russell

Title: Business Manager

## AMENDMENT # 2 TO THE LABOR AGREEMENT

The United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada Local 23 and the Piping Industry Council Rockford Area hereby adopt the following amendment to the Labor Agreement in effect through May 31, 2007 effective June 1, 2005:

Section 14.4 is amended to read as follows:

**Section 14.4. Education Fund.** As of June 1, 2005, any contractor working under any National Agreement that does not allow for contributions to be paid to the Education Fund shall pay monies allotted to that Education Fund into the Apprentice Training Fund.

**PIPING INDUSTRY COUNCIL, ROCKFORD AREA**

By: _Gary Statdfield_                    5/24/05
Title: PICRA Negotiating Committee        Date

**UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA**

By: _Darryll Russell_                    5/24/05
Title: Business Manager                  Date

April 17, 2007

Plumbers & Pipefitters Local 23
Rockford IL

To Whom It May Concern:

This letter is to inform you that Kerby Plumbing Incorporated will no longer be participating in the union program.
Effective April 1, 2007, payments to Local 23 will cease.

If you have any questions, please contact Kerby Plumbing at (815) 703-8211.

Best Regards,

Dale Kerby, President
Kerby Plumbing Incorporated

Page 1

EXHIBIT
3

**J&K** ATTORNEYS AT LAW

Johnson & Krol, LLC

July 11, 2007

**Via Facsimile and Regular Mail**
Thomas O. Meyer
Meyer & Horning, P.C.
3400 North Rockton Avenue
Rockford, IL 61103
Fax No.: (815) 636-9352

        Re:    Plumbers and Pipe Fitters Local 23 v.
                Kerby Plumbing, Inc.

Dear Mr. Meyer:

       Please be advised that this firm represents the Plumbers and Pipe Fitters Local Union No. 23. Please direct all future correspondence in the above-referenced matter to my attention.

       I am in receipt of your letter of June 22, 2007 in which you purport to cancel the Local 23 Labor Agreement on behalf of Kerby Plumbing, Inc. Although the company has ceased doing business as Kerby Plumbing, Inc., records maintained by the Illinois Secretary of State indicate the company recently reincorporated as Kerby Plumbing & Mechanical, Inc. and continues to operate within the trade jurisdiction of the Local 23 Labor Agreement.

       As the company has merely changed its name, it remains obligated under the Labor Agreement to which it is signatory. As a result, the company has an absolute continuing obligation to submit monthly contribution reports and the associated payments pursuant to the Labor and Trust Agreements by which it is bound.

       Should the company fail to meet its continued obligation under the Labor and Trust Agreements, my office will initiate federal litigation to enforce the terms of the agreements. If I am forced to file suit in this matter, the company will be held responsible for the Trust Funds' attorney's fees and costs incurred during the course of collection, in addition to any amounts it may already owe.

       Thank you for your anticipated cooperation. If you wish to discuss this matter, please do hesitate to contact me.

                           Very truly yours,

                           Joseph E. Mallon

cc:    Mr. Darryll Russell
        Ms. Phyllis Athans

**EXHIBIT**
4

208 South LaSalle Street • Suite 1602 • Chicago, Illinois 60604
Ph. (312) 372.8587 • Fax. (312) 255.0449
johnson@johnsonkrol.com • krol@johnsonkrol.com

RECD SEP 10 2007

# COMBINED CRAFTS STATEWIDE AUDIT PROGRAM

CARPENTERS · BRICKLAYERS · MASONS · OPERATIVE PLASTERERS · LABORERS · OP. ENGINEERS
PAINTERS · TILE FINISHERS · IRONWORKERS · PLUMBERS · PIPEFITTERS · STEAMFITTERS
SHEET METAL WORKERS · HEAT & FROST INSULATORS

September 6, 2007

2901 W. BELTLINE HIGHWAY, SUITE 100
MADISON, WI 53713-4231
PHONE (608) 278-9500

KERBY PLUMBING & MECHANICAL, INC
4771 Alexandra Lane
Machesney Park, IL 61115-0000
Mr. Norman Kerby, President

RE: Field Audit Examination of: Tuesday, August 28, 2007
    Period of Audit:  Apr-01-2007 thru Jul-31-2007
    Craft:  Rockford Pipe Trades Loc 23

Dear Mr. Kerby :

Our field auditor examined your firms payroll records recently to determine if contributions were consistently correct for the various funds within the provisions of the governing trust agreement on behalf of the employees performing work within the jurisdiction.

The audit, including a review of the payroll records, answers to questions presented by the auditor and records of contributions paid to the Fund(s) indicates a deficiency between hours worked and hours reported to the Funds.

We are enclosing for your file, copies of the remittance report forms prepared for you by Our audit staff.  Kindly remit a check for the indicated total amount below payable to the separate Fund(s).

|  | Contributions | Interest | Liq Damages | Grand Total |
|---|---|---|---|---|
|  | $9,804.96 | $111.66   258.45 | $490.25 | $10,406.87 |
| Rockford PT 23 Pension | $4,538.88 | $51.70 | $226.95 | $4,817.53 |
| Rockford PT 23 Health | $3,974.40 | $45.26 | $198.72 | $4,218.38 |
| Rockford PT 23 401k | $0.00 | $0.00 | $0.00 | $0.00 |
| Rockford PT 23 Training | $380.16 | $4.32 | $19.01 | $403.49 |
| Rockford PT 23 Industry | $0.00 | $0.00 | $0.00 | $0.00 |
| Rockford PT 23 Intl Training | $28.80 | $0.32 | $1.44 | $30.56 |
| Rockford PT 23 Wage Assess | $485.28 | $5.52 | $24.27 | $515.07 |
| Rockford PT 23 Build Trades | $17.28 | $0.20 | $0.87 | $18.35 |
| Rockford PT 23 Target Fund | $172.80 | $1.96 | $8.64 | $183.40 |
| Rockford PT 23 PAC | $11.52 | $0.14 | $0.57 | $12.23 |
| Rockford PT 23 IPTAPP | $40.32 | $0.46 | $2.01 | $42.79 |
| Rockford PT 23 Education | $155.52 | $1.78 | $7.77 | $165.07 |

1 1/2% will be assessed on the unpaid balance.

9-10-07
To: Joe Mallon
From:



EXHIBIT

5

# COMBINED CRAFTS STATEWIDE AUDIT PROGRAM

CARPENTERS · BRICKLAYERS · MASONS · OPERATIVE PLASTERERS · LABORERS · OP. ENGINEERS
PAINTERS · TILE FINISHERS · IRONWORKERS · PLUMBERS · PIPEFITTERS · STEAMFITTERS
SHEET METAL WORKERS · HEAT & FROST INSULATORS

2901 W. BELTLINE HIGHWAY, SUITE 100
MADISON, WI 53713-4231
TELEPHONE (608) 278-9500

KERBY PLUMBING & MECHANICAL INC
4771 Alexandra Lane
Machesney Park IL 61115-0000
Mr. Norman Kerby President

September 6, 2007
Page 2

Payment in full to the Fund is required within fourteen (14) days from the date of this letter. In the event payment is not received in fourteen (14) days, the file will be referred to the collection attorney. The effect of such will be the imposition of liquidated damages of (20%) of the unpaid contributions. Additional interest, attorney's fees and costs will also be assessed.

The Trustees urge you to make the payment specified within the allocated time to save you additional expenses. For your convenience, and for control purposes, please use the enclosed self-addressed envelope for your remittance.

Sincerely,

Michael G. Koehler
Payroll Audit Supervisor

MGK/db

Enclosure

CC. Mr. Darryll Russell, Business Agent

Mr. Kristina Walstrom

Ms. Phyllis Athans, Administrative Manager

# PLUMBERS & PIPEFITTERS U.A. LOCAL 23
# AUDIT BILLING SUMMARY SHEET

Employer:      Kerby Plumbing & Mechanical, Inc.
Audit Date:    August 28, 2007
Audit Period:  4/1/07 - 7/31/07

| | Fund | Contr. Amt. | L/D's | Interest | Total |
|---|---|---|---|---|---|
| PT23P | Pension | 4,538.88 | 226.95 | 51.70 | 4,817.53 |
| PT23H | Health | 3,974.40 | 198.72 | 45.26 | 4,218.38 |
| PT23T | Training | 380.16 | 19.01 | 4.32 | 403.49 |
| PT23E | Education | 155.52 | 7.77 | 1.78 | 165.07 |
| PT23IT | Int'l Training | 28.80 | 1.44 | 0.32 | 30.56 |
| PT23WA | Wage Assessment | 485.28 | 24.27 | 5.52 | 515.07 |
| PT23BT | Building Trades | 17.28 | 0.87 | 0.20 | 18.35 |
| PT23TF | Target Fund | 172.80 | 8.64 | 1.96 | 183.40 |
| PT23PAC | PAC | 11.52 | 0.57 | 0.14 | 12.23 |
| PT23IPT | IPTAPP | 40.32 | 2.01 | 0.46 | 42.79 |
| | | | | | |
| | | $9,804.96 | $490.25 | $111.66 | $10,406.87 |

PT 23:

| | |
|---|---|
| PT23P | Plumbers & Pipefitters #23 Pension Fund |
| PT23H | Plumbers & Pipefitters #23 Health Fund |
| PT23T | Plumbers & Pipefitters #23 Training Fund |
| PT23E | Plumbers & Pipefitters #23 Education Fund |
| PT23IT | Plumbers & Pipefitters #23 International Training |
| PT23WA | Plumbers & Pipefitters #23 Wage Assessment |
| PT23BT | Plumbers & Pipefitters #23 Building Trades |
| PT23TF | Plumbers & Pipefitters #23 Target Fund |
| PT23PAC | Plumbers & Pipefitters #23 PAC Fund |
| PT23IPT | Plumbers & Pipefitters #23 IPTAPP Fund |

# PLUMBERS & PIPEFITTERS U.A. LOCAL 23
## AUDIT FRINGE BENEFIT REMITTANCE REPORT

Employer: Kerby Plumbing & Mechanical, Inc.
Address: 4771 Alexandra Lane
Machesney Park, IL 61115

Work Mo: June 2007
Code: PT607
Mos: 2
Prime rate: 8.25%

| Employee | Soc. Sec. # | Discrep. | Hrs Worked | Hrs Paid | Gross Wages | LD's |
|---|---|---|---|---|---|---|
| Kerby, Christopher | 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 | delinquent | 64.00 | 64.00 | 2,156.80 | |
| Kerby, Gregory | 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 | delinquent | 64.00 | 64.00 | 2,156.80 | |
| Kerby, Robert | 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 | delinquent | 64.00 | 64.00 | 2,156.80 | |

| Fund | Contr. Rate | Total Hrs. | Contr. Amt. | L\D's | Interest | Total |
|---|---|---|---|---|---|---|
| Pension | $7.88 | 192.00 | 1,512.96 | 75.65 | 25.85 | 1,614.46 |
| Health | $6.90 | 192.00 | 1,324.80 | 66.24 | 22.63 | 1,413.67 |
| Training | $0.66 | 192.00 | 126.72 | 6.34 | 2.16 | 135.22 |
| Education | $0.27 | 192.00 | 51.84 | 2.59 | 0.89 | 55.32 |
| International Training | $0.05 | 192.00 | 9.60 | 0.48 | 0.16 | 10.24 |
| Wage Assessment | 2.50% | 6,470.40 | 161.76 | 8.09 | 2.76 | 172.61 |
| Building Trades | $0.03 | 192.00 | 5.76 | 0.29 | 0.10 | 6.15 |
| Target Fund | $0.30 | 192.00 | 57.60 | 2.88 | 0.98 | 61.46 |
| PAC | $0.02 | 192.00 | 3.84 | 0.19 | 0.07 | 4.10 |
| IPTAPP | $0.07 | 192.00 | 13.44 | 0.67 | 0.23 | 14.34 |
| | | | | | Page Total = | 3,487.57 |

3,268.32

# PLUMBERS & PIPEFITTERS U.A. LOCAL 23
## AUDIT FRINGE BENEFIT REMITTANCE REPORT

| | | |
|---|---|---|
| Employer: | Kerby Plumbing & Mechanical, Inc. | Work Mo: July 2007 |
| Address: | 4771 Alexandra Lane | Code: PT607 |
| | Machesney Park, IL 61115 | Mos: 1 |
| | | Prime rate: 8.25% |

| Employee | Soc. Sec. # | Discrep. | Hrs Worked | Hrs Paid | Gross Wages | LD's |
|---|---|---|---|---|---|---|
| Kerby, Christopher | 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 | delinquent | 128.00 | 128.00 | 4,313.60 | |
| Kerby, Gregory | 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 | delinquent | 128.00 | 128.00 | 4,313.60 | |
| Kerby, Robert | 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 | delinquent | 128.00 | 128.00 | 4,313.60 | |

| Fund | Contr. Rate | Total Hrs. | Contr. Amt. | L\D's | Interest | Total |
|---|---|---|---|---|---|---|
| Pension | $7.88 | 384.00 | 3,025.92 | 151.30 | 25.85 | 3,203.07 |
| Health | $6.90 | 384.00 | 2,649.60 | 132.48 | 22.63 | 2,804.71 |
| Training | $0.66 | 384.00 | 253.44 | 12.67 | 2.16 | 268.27 |
| Education | $0.27 | 384.00 | 103.68 | 5.18 | 0.89 | 109.75 |
| International Training | $0.05 | 384.00 | 19.20 | 0.96 | 0.16 | 20.32 |
| Wage Assessment | 2.50% | 12,940.80 | 323.52 | 16.18 | 2.76 | 342.46 |
| Building Trades | $0.03 | 384.00 | 11.52 | 0.58 | 0.10 | 12.20 |
| Target Fund | $0.30 | 384.00 | 115.20 | 5.76 | 0.98 | 121.94 |
| PAC | $0.02 | 384.00 | 7.68 | 0.38 | 0.07 | 8.13 |
| IPTAPP | $0.07 | 384.00 | 26.88 | 1.34 | 0.23 | 28.45 |
| | | | 6,536.64 | | Page Total = | 6,919.30 |

## Combined Crafts Statewide Audit Program

1. Date of Audit:    August 28, 2007    Reason:    Requested
2. Firm Name:    Kerby Plumbing & Mechanical, Inc.    Structure: Corporation
3. Address:    4771 Alexandra Lane    City\State: Machesney Park, IL 61115
4. Invoice s/b/ sent to:
5. Phone No:    (815) 703-8211    6. Crafts: Plumbers #23
   Fax No:
7. Owner(s): Pres:    Norman D Kerby    V.Pres.    Robert Kerby
   Sec/Treas:    Gregory Kerby/Christopher Ker    Sole Prop.
   Partners:
   Employer Rep:    Robert Kerby
8. Names not on Remittance Reports Submitted: See Attached Addendum:    X
9. Indicate here Deficiency in hours compared to contributions:    X
10. Indicate here No Deficiency in hours compared to contributions:
11. Comments Concerning Audit:
 The audit was conducted using weekly payroll records and a Federal form 941. No other records were available. The audit revealed the company is delinquent for two months (June & July 2007). There was no payroll for the company from April 1, 2007 through June 15, 2007.


Plumbers #23 - delinquent



12. Misclassification of Employees:
   Indicate here if Auditor furnished with 1099 & 1096 Forms:
   Indicate here if Employer stated no 1099 Forms filed this Period:    X
13. Signatory to an NBU Agreement?    Yes/No?    No    Craft:
   NBU Compliance?    Yes:    No:
   NBU employee funded under bargaining unit agreement:    Yes/No?    See summary
14. Signatory to an Alumni Agreement?    x    Craft:
   Alumni compliance?    Yes:    No:
15. Currently Delinquent?    Yes/No?    Yes    Period:  June, July 2007
16. Period of Audit:    4/1/07 - 7/31/07
17. Employer Withdrawal:    Yes:    No:    X
   Reason:
18. Firm's EIN:    26-0354937    19. Auditor:    Emil Pocernich
AH02    20. A/T:

PAYROLL AUDIT - SUMMARY OF RESULTS & NOTES

COMPANY NAME Kerby Plumbing & Mechanical, Inc.   DATE OF AUDIT:   Aug 28, 2007     DURATION: 4/1/07 - 7/31/07

The following personnel listed are not funded, funded elsewhere, and/or classified by the company as follows:

| NAME | SS# | CLASSIFICATION |
|---|---|---|
| Robert Kerby * | 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 | Vice-President |
| Gregory Kerby * | 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 | Secretary |
| Christopher Kerby * | 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 | Treasurer |

* Reported under Plumbers #23 CBA.

AUDITOR:  Emil Pocernich

# COMBINED CRAFTS STATEWIDE AUDIT PROGRAM
CARPENTERS · BRICKLAYERS · MASONS · OPERATIVE PLASTERERS · LABORERS · OP. ENGINEERS
PAINTERS · TILE FINISHERS · IRONWORKERS · PLUMBERS · PIPEFITTERS · STEAMFITTERS
SHEET METAL WORKERS · HEAT & FROST INSULATORS

December 20, 2007

2901 W. BELTLINE HIGHWAY, SUITE 100
MADISON, WI 53713-4231
TELEPHONE (608) 278-9500

KERBY PLUMBING & MECHANICAL INC
4771 Alexandra Lane
Machesney Park, IL 61115-0000
Mr. Norman Kerby, President

RE: Field Audit Examination of: Thursday, December 13, 2007
    Period of Audit:  Aug-01-2007 thru Nov-30-2007
    Craft:  Rockford Pipe Trades Loc 23

Dear Mr. Kerby :

Our field auditor examined your firms payroll records recently to determine if contributions  were consistently correct for the various funds within the provisions of the governing trust agreement on behalf of the employees performing work within the jurisdiction.

The audit, including a review of the payroll records, answers to questions presented by the auditor and records of contributions paid to the Fund(s) indicates a deficiency between hours worked and hours reported to the Funds.

We are enclosing for your file, copies of the remittance report forms prepared for you by Our audit staff.  Kindly remit a check for the indicated total amount below payable to the separate Fund(s).

|  | Contributions | Interest | Liq Damages | Grand Total |
|---|---|---|---|---|
|  | $36,242.00 | $398.89 | $1,271.93 | $37,912.82 |
| Rockford PT 23 Pension | $16,894.72 | $185.65 | $592.58 | $17,672.95 |
| Rockford PT 23  Health | $14,793.60 | $162.57 | $518.88 | $15,475.05 |
| Rockford PT 23 401k | $0.00 | $0.00 | $0.00 | $0.00 |
| Rockford PT 23 Training | $1,415.04 | $15.55 | $49.64 | $1,480.23 |
| Rockford PT 23  Industry | $0.00 | $0.00 | $0.00 | $0.00 |
| Rockford PT 23  Intl Training | $107.20 | $1.18 | $3.76 | $112.14 |
| Rockford PT 23  Wage Assess | $1,552.08 | $17.69 | $55.19 | $1,624.96 |
| Rockford PT 23  Build Trades | $64.32 | $0.70 | $2.26 | $67.28 |
| Rockford PT 23  Target Fund | $643.20 | $7.07 | $22.56 | $672.83 |
| Rockford PT 23  PAC | $42.88 | $0.47 | $1.50 | $44.85 |
| Rockford PT 23  IPTAPP | $150.08 | $1.65 | $5.26 | $156.99 |
| Rockford PT 23  Education | $578.88 | $6.36 | $20.30 | $605.54 |

1 1/2% will be assessed on the unpaid balance.



EXHIBIT
G

# COMBINED CRAFTS STATEWIDE AUDIT PROGRAM

CARPENTERS · BRICKLAYERS · MASONS · OPERATIVE PLASTERERS · LABORERS · OP. ENGINEERS
PAINTERS · TILE FINISHERS · IRONWORKERS · PLUMBERS · PIPEFITTERS · STEAMFITTERS
SHEET METAL WORKERS · HEAT & FROST INSULATORS

2901 W. BELTLINE HIGHWAY, SUITE 100
MADISON, WI 53713-4231
TELEPHONE (608) 278-9500

KERBY PLUMBING & MECHANICAL, INC.
4771 Alexandra Lane
Machesney Park IL  61115-0000
Mr. Norman Kerby President

December 20, 2007
Page 2

Payment in full to the Fund is required within fourteen (14) days from the date of this letter.  In the event payment is not received in fourteen (14) days, the file will be referred to the collection attorney.  The effect of such will be the imposition of liquidated damages of (20%) of the unpaid contributions.  Additional Interest, attorney's fees and costs will also be assessed.

The Trustees urge you to make the payment specified within the allocated time to save you additional expenses.  For your convenience, and for control purposes, please use the enclosed self-addressed envelope for your remittance.

Sincerely,

Michael G. Koehler
Payroll Audit Supervisor

MGK/db

Enclosure

CC.    Mr. Darryl Russell, Business Agent

      Ms. Phyllis Athans, Administrative Manager

# COMBINED CRAFTS STATEWIDE AUDIT PROGRAM

CARPENTERS · BRICKLAYERS · MASONS · OPERATIVE PLASTERERS · LABORERS · OP. ENGINEERS
PAINTERS · TILE FINISHERS · IRONWORKERS · PLUMBERS · PIPEFITTERS · STEAMFITTERS
SHEET METAL WORKERS · HEAT & FROST INSULATORS

2901 W. BELTLINE HIGHWAY, SUITE 100
MADISON, WI 53713-4231
TELEPHONE (608) 278-9500

January 23, 2008

JOHNSON & KROL
MS. DENNIS JOHNSON
ATTORNEY AT LAW
208 South LaSalle Street, Suite 1602
Chicago, IL 60604-0000

Dear Ms. Johnson:

Audit Period: Aug-01-2007        thru   Nov-30-2007

RE: Referral for Collection   Rockford Pipe Trades Loc 23

In the best interest of the respective Boards of Trustees, the following is hereby referred to you for immediate legal collection. Please advise if you require further information.

FIRM:        Kerby Plumbing & Mechanical, Inc
ADDRESS:     4771 Alexandra Lane
             Machesney Park, IL  61115-0000

|  | Contributions $36,242.00 | Interest $398.89 | Liq Damages $1,271.93 | Total $37,912.82 |
|---|---|---|---|---|
| Rockford PT 23 Pension | $16,894.72 | $185.65 | $592.58 | $17,672.95 |
| Rockford PT 23 Health | $14,793.60 | $162.57 | $518.88 | $15,475.05 |
| Rockford PT 23 401k | $0.00 | $0.00 | $0.00 | $0.00 |
| Rockford PT 23 Training | $1,415.04 | $15.55 | $49.64 | $1,480.23 |
| Rockford PT 23 Industry | $0.00 | $0.00 | $0.00 | $0.00 |
| Rockford PT 23 Intl Training | $107.20 | $1.18 | $3.76 | $112.14 |
| Rockford PT 23 Wage Assessment | $1,552.08 | $17.69 | $55.19 | $1,624.96 |
| Rockford PT 23 Build Trades | $64.32 | $0.70 | $2.26 | $67.28 |
| Rockford PT 23 Target Fund | $643.20 | $7.07 | $22.56 | $672.83 |
| Rockford PT 23 PAC | $42.88 | $0.47 | $1.50 | $44.85 |
| Rockford PT 23 IPTAPP | $150.08 | $1.65 | $5.26 | $156.99 |
| Rockford PT 23 Education | $578.88 | $6.36 | $20.30 | $605.54 |

Sincerely,

Michael G. Koehler
Payroll Audit Supervisor

cc.   Mr. Darryl Russell
      Ms. Dennis Johnson
      Ms. Phyllis Athans

The following are attached:

☑ Billing Letter
☑ Remittance Report
☑ Audit History
☐ Signed CBA

## Combined Crafts Statewide Audit Program

1. Date of Audit:     December 18, 2007    Reason:    Requested
2. Firm Name:     Kerby Plumbing & Mechanical, Inc.        Structure: Corporation
3. Address:     4771 Alexandra Lane        City\State:  Machesney Park, IL 61115
4. Invoice s/b/ sent to:
5. Phone No:     (815) 703-8211        6. Crafts:    Plumbers #23
   Fax No:
7. Owner(s):  Pres:     Norman D Kerby        V.Pres.    Robert Kerby
   Sec/Treas:     Gregory Kerby/Chris Kerby        Sole Prop.
   Partners:
   Employer Rep:     Wayne Kerby
8. Names not on Remittance Reports Submitted: See Attached Addendum:        X
9. Indicate here Deficiency in hours compared to contributions:        X
10. Indicate here No Deficiency in hours compared to contributions:
11. Comments Concerning Audit:

The audit was conducted using weekly payroll records, remittance reports, 941's, and Illinois quarterly wage reports. The audit revealed the company is delinquent for the months of August, September, and October 2007 and the month of November 2007 is also due.

Plumbers #23 - delinquent

12. Misclassification of Employees:
    Indicate here if Auditor furnished with 1099 & 1096 Forms:
    Indicate here if Employer stated no 1099 Forms filed this Period:        X
13. Signatory to an NBU Agreement?        Yes/No?    No    Craft:
    NBU Compliance?        Yes:        No:
    NBU employee funded under bargaining unit agreement:    Yes/No?    See summary
14. Signatory to an Alumni Agreement?    No    Craft:
    Alumni compliance?        Yes:        No:
15. Currently Delinquent?        Yes/No?    No    Period:
16. Period of Audit:    8/1/07 - 11/30/07
17. Employer Withdrawal:    Yes:        No:    X
    Reason:
18. Firm's EIN:    26-0354937        19.  Auditor:    Emil Pocernich

AH02

PAYROLL AUDIT - SUMMARY OF RESULTS & NOTES

COMPANY NAME Kerby Plumbing & Mech, Inc.     DATE OF AUDIT:  Dec 18, 2007     DURATION: 8/1/07 - 11/30/07

The following personnel listed are not funded, funded elsewhere, and/or classified by the company as follows:

| NAME | SS# | CLASSIFICATION |
|---|---|---|
| Robert Kerby * | 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 | Vice-President |
| Gregory Kerby * | 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 | Secretary |
| Christopher Kerby * | 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 | Treasurer |

* Reported under the Plumbers #23 CBA.

AUDITOR:  Emil Pocernich

# PLUMBERS & PIPEFITTERS U.A. LOCAL 23
# AUDIT BILLING  SUMMARY SHEET

Employer:       Kerby Plumbing & Mechanical, Inc.
Audit Date:     December 18, 2007
Audit Period:   8/1/07 - 11/30/07

|          | Fund | Contr. Amt. | L/D's | Interest | Total |
|----------|------|-------------|-------|----------|-------|
| PT23P    | Pension | 16,894.72 | 592.58 | 185.65 | 17,672.95 |
| PT23H    | Health | 14,793.60 | 518.88 | 162.57 | 15,475.05 |
| PT23T    | Training | 1,415.04 | 49.64 | 15.55 | 1,480.23 |
| PT23E    | Education | 578.88 | 20.30 | 6.36 | 605.54 |
| PT23IT   | Int'l Training | 107.20 | 3.76 | 1.18 | 112.14 |
| PT23WA   | Wage Assessment | 1,552.08 | 55.19 | 17.69 | 1,624.96 |
| PT23BT   | Building Trades | 64.32 | 2.26 | 0.70 | 67.28 |
| PT23TF   | Target Fund | 643.20 | 22.56 | 7.07 | 672.83 |
| PT23PAC  | PAC | 42.88 | 1.50 | 0.47 | 44.85 |
| PT23IPT  | IPTAPP | 150.08 | 5.26 | 1.65 | 156.99 |
|          |      |             |       |          |       |
|          |      | $36,242.00 | $1,271.93 | $398.89 | $37,912.82 |

PT 23:

| | |
|---|---|
| PT23P | Plumbers & Pipefitters #23 Pension Fund |
| PT23H | Plumbers & Pipefitters #23 Health Fund |
| PT23T | Plumbers & Pipefitters #23 Training Fund |
| PT23E | Plumbers & Pipefitters #23 Education Fund |
| PT23IT | Plumbers & Pipefitters #23 International Training |
| PT23WA | Plumbers & Pipefitters #23 Wage Assessment |
| PT23BT | Plumbers & Pipefitters #23 Building Trades |
| PT23TF | Plumbers & Pipefitters #23 Target Fund |
| PT23PAC | Plumbers & Pipefitters #23 PAC Fund |
| PT23IPT | Plumbers & Pipefitters #23 IPTAPP Fund |

# PLUMBERS & PIPEFITTERS U.A. LOCAL 23
## AUDIT FRINGE BENEFIT REMITTANCE REPORT

Employer: Kerby Plumbing & Mechanical, Inc.

Address: 4771 Alexandra Lane

Machesney Park, IL  61115

Work Mo:  Aug 2007

Code:  PT607

Mos:  3

Prime rate:  7.50%          LD's

| Employee | Soc. Sec. # | Discrep. | Hrs Worked | Hrs Paid | Gross Wages | |
|---|---|---|---|---|---|---|
| Kerby, Christopher | 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 | delinquent | 160.00 | 160.00 | 5,392.00 | |
| Kerby, Gregory | 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 | delinquent | 128.00 | 128.00 | 4,313.60 | |
| Kerby, Robert | 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 | delinquent | 160.00 | 160.00 | 5,392.00 | |
| Kerby, Zachary | 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 | delinquent | 32.00 | 32.00 | 352.00 | |

| Fund | Contr. Rate | Total Hrs. | Contr. Amt. | L\D's | Interest | Total |
|---|---|---|---|---|---|---|
| Pension | $7.88 | 480.00 | 3,782.40 | 189.12 | 89.83 | 4,061.35 |
| Health | $6.90 | 480.00 | 3,312.00 | 165.60 | 78.66 | 3,556.26 |
| Training | $0.66 | 480.00 | 316.80 | 15.84 | 7.52 | 340.16 |
| Education | $0.27 | 480.00 | 129.60 | 6.48 | 3.08 | 139.16 |
| International Training | $0.05 | 480.00 | 24.00 | 1.20 | 0.57 | 25.77 |
| Wage Assessment | 2.50% | 15,449.60 | 386.24 | 19.31 | 9.17 | 414.72 |
| Building Trades | $0.03 | 480.00 | 14.40 | 0.72 | 0.34 | 15.46 |
| Target Fund | $0.30 | 480.00 | 144.00 | 7.20 | 3.42 | 154.62 |
| PAC | $0.02 | 480.00 | 9.60 | 0.48 | 0.23 | 10.31 |
| IPTAPP | $0.07 | 480.00 | 33.60 | 1.68 | 0.80 | 36.08 |
| | | | | Page | Total = | 8,753.89 |

## PLUMBERS & PIPEFITTERS U.A. LOCAL 23
## AUDIT FRINGE BENEFIT REMITTANCE REPORT

Employer: Kerby Plumbing & Mechanical, Inc.

Address: 4771 Alexandra Lane

Machesney Park, IL  61115

Work Mo: Oct 2007

Code: PT607

Mos: 1

Prime rate: 7.50%

LD's

| Employee | Soc. Sec. # | Discrep. | Hrs Worked | Hrs Paid | Gross Wages | |
|----------|-------------|----------|------------|----------|-------------|--|
| Kerby, Christopher | 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 | delinquent | 128.00 | 128.00 | 4,313.60 | |
| Kerby, Gregory | 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 | delinquent | 128.00 | 128.00 | 4,313.60 | |
| Kerby, Robert | 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 | delinquent | 128.00 | 128.00 | 4,313.60 | |
| Kerby, Zachary | 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 | delinquent | 128.00 | 128.00 | 1,408.00 | |

| Fund | Contr. Rate | Total Hrs. | Contr. Amt. | L\D's | Interest | Total |
|------|-------------|------------|-------------|-------|----------|-------|
| Pension | $7.88 | 512.00 | 4,034.56 | 201.73 | 31.94 | 4,268.23 |
| Health | $6.90 | 512.00 | 3,532.80 | 176.64 | 27.97 | 3,737.41 |
| Training | $0.66 | 512.00 | 337.92 | 16.90 | 2.68 | 357.50 |
| Education | $0.27 | 512.00 | 138.24 | 6.91 | 1.09 | 146.24 |
| International Training | $0.05 | 512.00 | 25.60 | 1.28 | 0.20 | 27.08 |
| Wage Assessment | 2.50% | 14,348.80 | 358.72 | 17.94 | 2.84 | 379.50 |
| Building Trades | $0.03 | 512.00 | 15.36 | 0.77 | 0.12 | 16.25 |
| Target Fund | $0.30 | 512.00 | 153.60 | 7.68 | 1.22 | 162.50 |
| PAC | $0.02 | 512.00 | 10.24 | 0.51 | 0.08 | 10.83 |
| IPTAPP | $0.07 | 512.00 | 35.84 | 1.79 | 0.28 | 37.91 |
| | | | | | Page Total = | 9,143.45 |

# PLUMBERS & PIPEFITTERS U.A. LOCAL 23
## AUDIT FRINGE BENEFIT REMITTANCE REPORT

Employer: **Kerby Plumbing & Mechanical, Inc.**
Address: **4771 Alexandra Lane**
**Machesney Park, IL  61115**

Work Mo: **Nov 2007**
Code: **PT607**
Mos:
Prime rate:                    LD's

| Employee | Soc. Sec. # | Discrep. | Hrs Worked | Hrs Paid | Gross Wages | |
|---|---|---|---|---|---|---|
| Kerby, Christopher | 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 | due 12/20 | 160.00 | 160.00 | 5,392.00 | |
| Kerby, Gregory | 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 | due 12/20 | 160.00 | 160.00 | 5,392.00 | |
| Kerby, Robert | 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 | due 12/20 | 160.00 | 160.00 | 5,392.00 | |
| Kerby, Zachary | 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 | due 12/20 | 160.00 | 160.00 | 1,760.00 | |

| Fund | Contr. Rate | Total Hrs. | Contr. Amt. | L\D's | Interest | Total |
|---|---|---|---|---|---|---|
| Pension | $7.88 | 640.00 | 5,043.20 | 0.00 | 0.00 | 5,043.20 |
| Health | $6.90 | 640.00 | 4,416.00 | 0.00 | 0.00 | 4,416.00 |
| Training | $0.66 | 640.00 | 422.40 | 0.00 | 0.00 | 422.40 |
| Education | $0.27 | 640.00 | 172.80 | 0.00 | 0.00 | 172.80 |
| International Training | $0.05 | 640.00 | 32.00 | 0.00 | 0.00 | 32.00 |
| Wage Assessment | 2.50% | 17,936.00 | 448.40 | 0.00 | 0.00 | 448.40 |
| Building Trades | $0.03 | 640.00 | 19.20 | 0.00 | 0.00 | 19.20 |
| Target Fund | $0.30 | 640.00 | 192.00 | 0.00 | 0.00 | 192.00 |
| PAC | $0.02 | 640.00 | 12.80 | 0.00 | 0.00 | 12.80 |
| IPTAPP | $0.07 | 640.00 | 44.80 | 0.00 | 0.00 | 44.80 |
| | | | | | Page Total = | 10,803.60 |

## 1ˢᵗ YEAR RESIDENTIAL APPRENTICE 2000-2001
## PROMISSORY DEMAND NOTICE
### For
## SCHOLARSHIP LOAN AGREEMENT

**$2000**

I Christopher Kerby, herein after known as Apprentice, hereby promise to pay to the Rockford Area Plumbing, Pipefitting and Refrigeration Joint Apprenticeship Committee [the Committee], on demand a Scholarship Loan of **$2000** [the Loan Amount] in accordance with the terms and provisions of the Scholarship Loan Agreement between the undersigned and the Committee, dated September 7, 2000 [the Agreement]. The Loan amount represents direct and indirect funds provided by the Committee.

I also understand that the Loan Amount will be reduced in accordance with Paragraph 7 of the Agreement for every year I work for an Employer within the Plumbing and Pipefitting Industry who makes contributions, pursuant to a collective bargaining agreement, to the Committee or a like Joint Apprenticeship or Training Committee, as follows:

| Years Worked | Percent Total Reduced | Annual Cumulative Amount Reduced | Net Amount | Amount Due |
|---|---|---|---|---|
| 1. | 10% | $200.00 | $200.00 | $1800.00 |
| 2. | 15% | $300.00 | $500.00 | $1500.00 |
| 3. | 20% | $400.00 | $900.00 | $1100.00 |
| 4. | 25% | $500.00 | $1400.00 | $600.00 |
| 5. | 30% | $600.00 | $2000.00 | $ -0- |
|  | 100% | | | |

I agree that if legal action is required to collect this Demand Note that I will pay interest at the prime rate prevailing as determined by the Amcore Bank of Rockford, Illinois, from the date of this Note, plus reasonable attorney's fees and all court costs.

Christopher Kerby
1924 Maple Ave
Loves Park IL 61111

Date: _9/7/00_

_Christopher Kerby_
Apprentice Signature

EXHIBIT
7

## RESIDENTIAL APPRENTICE SCHOLARSHIP AGREEMENT
## BETWEEN
## APPRENTICE AND JOINT APPRENTICESHIP COMMITTEE

WHEREAS, the Joint Apprenticeship Committee of United Association Local Union No. 23 [hereinafter Committee], and Christopher Kerby [hereinafter Apprentice] understand and agree that the Committee will expend significant sums of money for the training of the Apprentice in the specialized skills necessary for employment in the Plumbing and Pipefitting Industry; and

WHEREAS, those sums of money will result in a substantial direct benefit, as well as a substantial indirect and intangible benefit to the Apprentice from this training, which is valued, at a minimum, in the amount set fourth in Paragraph 1 hereto [the Scholarship Loan]; and

WHEREAS, the Committee will grant a Scholarship Loan to the Apprentice in the amount set forth in paragraph 1 hereof for the 1st year of the Apprentice's training; and

WHEREAS, the Scholarship Loan amount for the Apprentice's subsequent years of training will be calculated on or before the anniversary date of this Agreement and a new Agreement and Promissory Note for that amount will be sent to the Apprentice and the Apprentice agrees to promptly execute such new Agreement and Promissory Note; and

WHEREAS, the Apprentice hereby understands and agrees that the Apprentice assumes certain obligations arising out of the training provided by the Committee, including the obligation to repay the total Scholarship Loan made to the Apprentice by the Committee for all years of training; and

WHEREAS, the Apprentice will repay the Scholarship Loan to the Committee pursuant to the terms set forth herein by either cash payment or in-kind credits received by working in the Plumbing and Pipefitting Industry for Employers under a collective bargaining agreement where by those Employers make contributions to the Committee;

NOW, THEREFORE, the Committee and Apprentice on this 7th day of September, 2000 hereby Agree and Covenant, for the good and valuable consideration set forth herein, as follows:

1.  <u>Scholarship Loan:</u> The Committee and the Apprentice hereby agree that the cost of the training, necessary equipment, maintenance and cost of operating the training facility, instructor's salaries [where applicable], and related materials, and the amount of the Scholarship Loan for the 1st year of training covered by this Agreement is **$2000**, and that the Apprentice will execute this Agreement and Promissory Note in the amount attached hereto as Exhibit 1, and deliver such executed Agreement and Promissory Note to the Committee.

2.  Subsequent Years of Training: The Committee and the Apprentice hereby agree that the cost of the training, necessary equipment, maintenance and cost of operating the training facility, instructor's salaries [where applicable], and related materials for each subsequent year of training shall be calculated by the Committee on or before the anniversary date of this agreement. That calculation shall be the amount of a new Agreement and Promissory Note that the Apprentice shall execute for that year of training. A separate Agreement and Promissory Note shall be signed for each year of training.

3.  Term of Training: The Committee will provide training worth at least the amount loaned to the Apprentice hereby during the period from the 7th day of September, 2000 to the 7th day of September, 2001.

4.  Repayment of Scholarship Loan: The Scholarship Loan may be repaid by the Apprentice in full either in cash as set forth in Exhibit 1 hereto, or by in-kind credits, as set forth in Paragraph 7 hereof.

5.  Warranty of the Apprentice: The apprentice agrees and warrants as a condition of receiving the Scholarship Loan that upon completion of the training provided pursuant to this Agreement, the Apprentice will neither seek nor accept employment from an Employer engaged in nor become an Employer engaged in, any general, mechanical, plumbing or pipefitting work or any other work covered by the Constitution of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, unless such employment is performed under the terms of a collective bargaining agreement that provides for the payment of contributions by such Employer to the Committee or like Joint Apprenticeship Training Committee.

6.  Breach of this Agreement: It will constitute an immediate breach of this Agreement if the Apprentice accepts employment in the Plumbing and Pipefitting Industry from an Employer who does not have a collective bargaining agreement which provides for the payment of contributions to the Committee or like Joint Apprenticeship Committee.

7.  Repayment by In-kind Credits: An Apprentice, who works pursuant to a collective bargaining agreement for an Employer making payments to the Committee or a like Joint Apprenticeship Committee or Training Committee, will receive credit for each calendar year of such employment in accordance with the Repayment Schedule set out in the Promissory Note attached hereto as Exhibit 1, and all subsequent Promissory Notes signed by the Apprentice. The amount due the Committee for the Scholarship Loan will be reduced by such amount in accordance therewith.

8.  <u>All Amounts Due and Payable if Breach Occurs:</u> If the Apprentice breaches this Agreement, all amounts due and owing on the Scholarship Loan, reduced by any credit received by the Apprentice pursuant to Paragraph 7 hereof, or by any cash payment made, will become immediately due and payable, together with interest at the prime interest rate then prevailing at the Amcore Bank in Rockford Illinois, from the date of this Agreement, and all costs of collection hereof, including reasonable attorney's fees and all court costs. The Apprentice hereby agrees and covenants to accept personal service and jurisdiction of any competent court determined by the Committee by the mailing of a copy of the Complaint brought pursuant to this Agreement to the current address provided in Paragraph 10 hereof.

9.  <u>Waiver of Breach:</u> An inadvertent breach of this Agreement can be waived in writing by the Committee at its sole discretion, and a waiver of such inadvertent breach of this Agreement will not be unreasonably withheld by the Committee.

10. <u>Notice:</u> All notices under this Agreement will be sent to the Committee and Apprentice as follows:

<u>Christopher Kerby</u>
<u>1924 Maple Ave</u>
<u>Loves Park IL 61111</u>

Committee:    Rockford Area Plumbing, Pipefitting and Refrigeration
Joint Apprenticeship Committee
4525 Boeing Drive
Rockford, Illinois 61109

The Apprentice hereby agrees to notify promptly the Committee of any change in the Apprentice's address.

11. <u>Plumbing and Pipefitting Industry:</u> As used herein the term Plumbing and Pipefitting Industry means any and all types of work covered by a collective bargaining agreement to which the United States and Canada, AFL-CIO [hereafter the United Association] and/or affiliated Local Union are party or under the trade jurisdiction of the United Association's Constitution, or in a related building trade.

Signed and agreed to this 7th day of September, 2000

By _____
Signature and Title – Joint Apprenticeship Committee

By _____
Apprentice

## 2nd YEAR RESIDENTIAL APPRENTICE 2001-2002
## PROMISSORY DEMAND NOTICE
### For
## SCHOLARSHIP LOAN AGREEMENT

**$2000**

I Christopher Kerby, herein after known as Apprentice, hereby promise to pay to the Rockford Area Plumbing, Pipefitting and Refrigeration Joint Apprenticeship Committee [the Committee], on demand a Scholarship Loan of **$2000** [the Loan Amount] in accordance with the terms and provisions of the Scholarship Loan Agreement between the undersigned and the Committee, dated August 23, 2001 [the Agreement]. The Loan amount represents direct and indirect funds provided by the Committee.

I also understand that the Loan Amount will be reduced in accordance with Paragraph 7 of the Agreement for every year I work for an Employer within the Plumbing and Pipefitting Industry who makes contributions, pursuant to a collective bargaining agreement, to the Committee or a like Joint Apprenticeship or Training Committee, as follows:

| Years Worked | Percent Total Reduced | Annual Cumulative Amount Reduced | Net Amount | Amount Due |
|---|---|---|---|---|
| 1. | 10% | $200.00 | $200.00 | $1800.00 |
| 2. | 15% | $300.00 | $500.00 | $1500.00 |
| 3. | 20% | $400.00 | $900.00 | $1100.00 |
| 4. | 25% | $500.00 | $1400.00 | $600.00 |
| 5. | 30% 100% | $600.00 | $2000.00 | $ -0- |

I agree that if legal action is required to collect this Demand Note that I will pay interest at the prime rate prevailing as determined by the Amcore Bank of Rockford, Illinois, from the date of this Note, plus reasonable attorney's fees and all court costs.

Christopher Kerby
1924 Maple Ave
Loves Park IL 61111

Date: 8/29/01

_Christopher Kerby_
Apprentice Signature

### 3rd YEAR RESIDENTIAL APPRENTICE 2002-2003
### PROMISSORY DEMAND NOTICE
### For
### SCHOLARSHIP LOAN AGREEMENT

**$3600**

I Christopher Kerby, herein after known as Apprentice, hereby promise to pay to the Rockford Area Plumbing, Pipefitting and Refrigeration Joint Apprenticeship Committee [the Committee], on demand a Scholarship Loan of **$3600** [the Loan Amount] in accordance with the terms and provisions of the Scholarship Loan Agreement between the undersigned and the Committee, dated August 22, 2002 [the Agreement].  The Loan amount represents direct and indirect funds provided by the Committee.

I also understand that the Loan Amount will be reduced in accordance with Paragraph 7 of the Agreement for every year I work for an Employer within the Plumbing and Pipefitting Industry who makes contributions, pursuant to a collective bargaining agreement, to the Committee or a like Joint Apprenticeship or Training Committee, as follows:

| Years Worked | Percent Total Reduced | Annual Cumulative Amount Reduced | Net Amount | Amount Due |
|---|---|---|---|---|
| 1. | 10% | $360.00 | $360.00 | $3240.00 |
| 2. | 15% | $540.00 | $900.00 | $2700.00 |
| 3. | 20% | $720.00 | $1620.00 | $1980.00 |
| 4. | 25% | $900.00 | $2520.00 | $1080.00 |
| 5. | 30% | $1080.00 | $3600.00 | $ -0- |
|  | 100% |  |  |  |

I agree that if legal action is required to collect this Demand Note that I will pay interest at the prime rate prevailing as determined by the Amcore Bank of Rockford, Illinois, from the date of this Note, plus reasonable attorney's fees and all court costs.

Christopher Kerby
1924 Maple Ave
Loves Park IL 61111

Date: 8/22/02

_Christopher Kerby_
Apprentice Signature

### 4th YEAR RESIDENTIAL APPRENTICE 2003-2004
### PROMISSORY DEMAND NOTICE
### For
### SCHOLARSHIP LOAN AGREEMENT

**$3600**

I Chris Kerby, herein after known as Apprentice, hereby promise to pay to the Rockford Area Plumbing, Pipefitting and Refrigeration Joint Apprenticeship Committee [the Committee], on demand a Scholarship Loan of **$3600** [the Loan Amount] in accordance with the terms and provisions of the Scholarship Loan Agreement between the undersigned and the Committee, dated August 4th, 2003 [the Agreement]. The Loan amount represents direct and indirect funds provided by the Committee.

I also understand that the Loan Amount will be reduced in accordance with Paragraph 7 of the Agreement for every year I work for an Employer within the Plumbing and Pipefitting Industry who makes contributions, pursuant to a collective bargaining agreement, to the Committee or a like Joint Apprenticeship or Training Committee, as follows:

| Years Worked | Percent Total Reduced | Annual Cumulative Amount Reduced | Net Amount | Amount Due |
|---|---|---|---|---|
| 1. | 10% | $360.00 | $360.00 | $3240.00 |
| 2. | 15% | $540.00 | $900.00 | $2700.00 |
| 3. | 20% | $720.00 | $1620.00 | $1980.00 |
| 4. | 25% | $900.00 | $2520.00 | $1080.00 |
| 5. | 30% 100% | $1080.00 | $3600.00 | $ -0- |

I agree that if legal action is required to collect this Demand Note that I will pay interest at the prime rate prevailing as determined by the Amcore Bank of Rockford, Illinois, from the date of this Note, plus reasonable attorney's fees and all court costs.

Chris Kerby
7326 Wallingford Way
Rockford IL 61107

Date: 8/6/03

Christopher Kerby
Apprentice Signature

Signed and agreed to this 4th day of August, 2003

By _____

Signature and Title – Joint Apprenticeship Committee

By _____

Apprentice

**OFFICE COPY**

# FILE COPY

XXI.   SIGNATURE PAGE FILE COPY

A.   I have read and understand the **STATEMENT OF POLICIES – RESIDENTIAL APPRENTICES** of the Rockford Area Plumbers, Pipefitters and Refrigeration Fitters U.A. Local 23 Joint Apprenticeship Training Committee (J.A.T.C.)

B.   The J.A.T.C. Training Director on the below date reviewed all sections of the **STATEMENT OF POLICIES – RESIDENTIAL APPRENTICES** answering all questions to my satisfaction.

8/6/03
Date

Christopher Kerby
Printed signature of Apprentice

8/6/03
Date

Christopher Kerby
Written signature of Apprentice

Kerby Pluming & Mechanical , Incorporated
4771 Alexander Lane
Machesney Park IL  61115

To whom it may concern,
   This letter is to in form the union officials that Robert D. Kerby, Gregory E. Kerby,
and Christopher L. Kerby are resigning their membership status in local 23.
We would like to thank the membership and officials for their time and concerns
over the years.

Respectfully Submitted,

Robert D. Kerby

Gregory E. Kerby

Christopher L. Kerby

Page 1


EXHIBIT
8